CAROLINE FERGUSON *v.* STEWART HAAS.

In all cases where there is a transmutation of possession under a deed, and, by any means other than a declaration of an express trust in writing, the trust estate becomes disjoined from the legal estate, parol evidence of the acts, dealings and declarations of the parties, becomes competent, to ascertain the nature and limits of such trust ; *therefore*

Where A made a deed for land, without consideration, to his brother, B, and the latter, afterwards, under a parol agreement with A, bought the same land, when sold under executions against A, and both continued to live together upon such land for several years, and until their deaths ; upon a controversy arising between their respective heirs, in regard to the title : *Held*, that the facts in regard to the manner in which the money that was paid at the sheriff's sale was raised, and the terms upon which A and B lived together upon the land, as well as the declarations and admissions of B as to the rights of A in the land, were competent evidence to establish a trust in said land in favor of A.

(*Foy* v. *Foy*, 2 Hay. 131 ; *Gay* v. *Hunt*, 1 Mur. 141 ; *Henderson* v. *Hoke*, 1 D. & B. Eq. 119 ; *Cook* v. *Redman*, 2 Ire. Eq. 623 ; *Clement* v. *Clement*, 1 Jon. Eq. 184 ; *Briggs* v. *Morris*, *id.* 193 ; *Taylor* v. *Taylor*, *id.* 246 ; *Shelton* v. *Shelton*, 5 Jon. Eq. 292 ; *Riggs* v. *Swann*, 6 Jon. Eq. 118 ; *Baker* v. *Evans*, Winst. Eq. 109, approved.)

BILL in equity, filed in 1866, and heard upon bill answer and proofs, by *Mitchell, J.*, at Spring Term 1870 of CALDWELL Court.

The bill alleged that Allen Ferguson was seized of a certain piece of land; that John Ferguson, his brother, and one

Langston, his brother-in-law, had obtained judgments against him; and that their executions had been levied on the land. Allen was then in prison; and it was agreed between him and John, that Allen should convey the land to John, who should also buy it in at the execution sale, and hold one-half of it in satisfaction of the execution debts, and the other half in trust for Allen in fee. In pursuance of this agreement, Allen, on Sept. 8th 1858, made an absolute deed in fee for the land to John, and shortly afterwards John bid it off at the execution sale, for $1300, it being worth $2500 or $3000, and took a deed from the Sheriff to himself alone. As proof of the agreement as to the ownership of the land, it was stated that $800 was borrowed for the benefit of Allen, from one Earnst, and that a mortgage was made to him (it is not said by whom) to secure that sum, which was subsequently paid off by Allen; but the mortgagee re-conveyed to John. Allen resided on the land up to his death, and his widow and children (the plaintiffs) have so continued up to the filing of the bill. Allen and John cultivated the land together, and divided the crops, and also the rents, equally; John during his life frequently admitted verbally, that Allen owned half the land, and both John and Allen treated it as their common property. John died, and his administrator filed a petition to sell the whole of the land as his property, to pay his debts. The plaintiffs pray that the heirs of John may be declared trustees for them, as to one-half of the land, and for other relief, &c. The defendants answered, and evidence was taken; and upon the hearing, the Judge found a state of facts in substance such as that stated in the plaintiff's bill. His Honor decreed for the plaintiffs, and the defendants appealed. The case was argued as upon a general demurrer to the bill, admitting the facts charged.

*Folk*, for the appellants.

At common law a *use* might be raised on anything which passed by feoffment and livery, but when the thing could not pass without deed, a deed or writing was required to raise the use: Gilbert on Uses, 260, 271, 2 Story's Eq. Jur. 235. When, afterwards, a deed was required to pass lands, a deed or writing became necessary to raise a use therein: *Brothers* v. *Harrell*, 2 Jon. Eq. 209,

2. All contracts to sell or convey lands, or any interest in them, shall be in writing. Rev. Code, ch. 50, sec. 11. In contemplation of a Court of Equity, a *trust* is embraced in the words *lands* or *interest*, &c. The *forum* where they are litigated, constitutes the only difference between trusts and legal estates. Whatever would be the rule of law, if it were a legal estate, is applied in equity to the trust. The same canons of descent are applied to both, they are subject to the same division: of freeholds and inheritances; of freeholds and less than freeholds; of estates in possession, remainder and reversion; of estates divided and undivided. They are liable to the same laws against perpetuity, legal charges, devolution and transfer. The trust, and, the land, are convertible terms. The word *land*, in a Court of Equity, should read *trust*, or a mischievous exception is made to the maxim, *equitas sequitur legem*. This construction is sustained by the rule applied where deeds absolute are converted into mortgages. A mortgagee is a trustee, first to secure his debt, then for the mortgagor; there is no difference between him and a trustee proper. A provision requiring trusts to be proved by writing, was necessary in the English statute, not in ours. Uses at common law stood upon their own reasons, differing from cases of possession. When, after the statute 27 Hen. 8, the Court of Chancery re-acquired jurisdiction of them under the name of trusts, the chancellor applied the rules of construction which had made uses odious, and continued so to con-

strue them until Stat. 29th Cha. II. The clause in that statute concerning trusts, was to compel the chancellor to conform to the rules regulating legal estates. It would have been unnecessary, had the maxim "equity follows the law" been then established; it was not established until Lord Nottingham held the Great Seal. But when our statute was passed, it was constantly applied. Equity follows statutes. Trusts are entailable, although *tenements* is the only word used in the statute. By *De donis*, fines are levied, and recoveries suffered, of them, and these are as necessary to bar equitable as legal estates. A devise of a trust must be with the same ceremony as a devise of a legal estate; a jointure of a trust is as good as one of legal estate, to bar dower and is a "competent livelihood of freehold" for that purpose. Some analogy exists with regard to the statute of limitations, and statutes generally. If a trust of land may be raised by parol, it may be transferred by parol, and thus the good intention of the statute, by a small evasion, is taken away, and evils, boundless in their range and pernicious in their consequences, introduced: Kent, Com. vol. 4, p. 914; Green. Cruise, vol. 1, p. 392; *Burgess* v. *Wheate*, 1 W. Blackstone's Rep. 160. If the parol agreement was, that John was to re-convey one-half of the land to Allen, then the bill cannot be maintained: *Campbell* v. *Campbell*, 2 Jon. Eq., 364.

On the question of fraud, see *Burroughs* v. *Jenkins*, Phil. Eq., 93.

*Malone, contra.*

1. It is well settled in this State that a "trust" in regard to lands may be declared by *parol*, and that the enforcement of the execution of a trust is not within the statute of frauds: See this same case, Phil. Eq., 113; *Cloninger* v. *Summit*, 2 Jon. Eq., 513; *Lyon* v. *Chrisman*, 2 D. & B. Eq., 268; *Steel* v. *Black*, 3 Jon. Eq., 427 : *Hargrave* v. *King*, 5 Ire.

Eq., 430; *Turner* v. *King*, 2 Ire. Eq., 132; *Shelton* v. *Shelton*, 5 Jon. Eq., 292; *Cohn* v. *Chapman*, Phil. Eq., 94; *Seymore* v. *Freer*, 8 Wall. 213; *Riggs et als.* v. *Swan, Adm'r*, 6 Jon. Eq., 118.

2. The *confidential relation* of the parties—their conduct—their mode of treatment of the property, the inadequacy of consideration, together with other facts in the case, are sufficient to create a trust by implication of law, without the proof of a declaration of a trust: 2 Story's Eq., Jur. 1255, 1231; Adams' Equity, 153,163; *Futrill* v. *Futrill*, 5 Jon. Eq., 61; *Estis* v. *Hartley*, Phil. Eq., 167.

3. The defendants have not relied upon the statute of frauds, in their answer: *Lyon* v. *Chrisman*, 2 D. & B. Eq., 268.

RODMAN, J. (After stating the facts as above.) The defendant contends that the case made by the bill is simply that of an oral declaration of a trust of the legal estate, which is invalid, by reason that the statute of frauds, Rev. Code, ch. 50, sec. 11, avoids all contracts to sell or convey any lands, &c., unless put in writing, and signed by the party to be charged therewith. His counsel, in an able and ingenious argument, endeavored to maintain that although the provision which is found in the English statute of frauds, 29 Car. II, c. 3, requiring all declarations of trust to be evidenced in writing, is not found in our statute, yet what is above cited is equivalent to it, and forbids a valid declaration of trust, except it be evidenced by writing.

He admitted that the decision in *Shelton* v. *Shelton*, 5 Jon. Eq. 292, was opposed to his view, and argued that that decision was an innovation, opposed to reason and authority. We think the counsel misapprehended the case of *Shelton* v. *Shelton*, and also the case of the present plaintiffs. The case in *Shelton* v. *Shelton* was, in substance, this: Mrs. Morgan purchased a piece of land, and caused the deed to be

made to her grandson, Vincent Shelton. By a principle of common application in the English, as well as in our, law, in the absence of any proof to the contrary, a presumptive trust would have arisen in favor of Mrs. Morgan; and after her death, her heirs filed the bill to enforce such a trust against the defendants, who were, the mother of Vincent Shelton and her children. *To repel this presumption,* and substitute a different trust from the one which the law presumed, the defendants proved oral declarations and acts by Mrs. Morgan, tending to establish a trust for them; and, among other things, a possession by them for many years during her life. Whether or not mere oral declarations by a holder of the legal estate are sufficient to create a trust for the benefit of a stranger, it is clear that no such point was decided in *Shelton* v. *Shelton.*

The authorities cited in 1 Spence, Eq. Jur., 495-497, prove that prior to 29 Car. II. declarations of trusts by words only were theoretically allowable, although we may suppose that such evidence by itself would be rarely deemed sufficient. As late as 28 Car. II. (1676) Lord Nottingham said, Express trusts are declared either by word or writing; and these declarations appear either by direct and manifest proof, or violent and necessary presumption. These latter are commonly called presumptive trusts; and that is when the Court upon consideration of all circumstances presumes there was a declaration either by word or writing, although the plain and direct proof thereof be not extant; *Cooke* v. *Fountain,* 3 Swanst. 291.

The statute of Charles, passed in the next year, avoided all declarations of trusts not evidenced by writing, but, by section 8, expressly excepted such trusts as are presumed by construction of law, (*Spence, ub. sup.*) and, under the heads of implied resulting and also constructive trusts, the English Courts have familiarly enforced a vast number of trusts not

evidenced by writing. A common instance of a resulting trust is that, where one person pays the consideration for land conveyed to another, as in *Shelton* v. *Shelton.* But in such a case it is the constant practice of the English Courts to permit the presumption to be repelled, and a trust to be established different from what would be presumed upon that state of facts merely, by proof of acts and declarations inconsistent with it. It is only in express trusts of real estate that a writing is required; 1 Spence 571; 2 Id. 20; 201 Lewin, Trusts 155; *Dyer* v. *Dyer,* 2 Cox 93; *Murless* v. *Franklin,* 1 Swanst 13; *Sidmouth* v. *Sidmouth,* 2 Beav. 447. In this last case, (which, however, did not relate to real estate) the Master of the Rolls, after stating the general rule, that a purchase by a parent in the name of a child, is an advancement, says, " but still the relation of parent and child is only evidence of the intention of the parent to advance the child, and that evidence may be rebutted by other evidence, manifesting an intention that the child shall be only a trustee," &c. That cotemporaneous acts, and even cotemporaneous declarations of the parent, may amount to such evidence, has often been decided.

In this point of view, the case of *Shelton* v. *Shelton* is consistent with the English decisions under their Statute, and of course with our Statute *in pari materia,* which contains no clause making void declarations of trusts not evidenced by writing.

And in this State it is very far from standing alone, as a reference to the following cases will show : *Foy* v. *Foy,* 2 Hay. 131; *Gay* v. *Hunt,* 1 Mur. 141; *Henderson* v. *Hoke,* 1 D. & B. Eq. 119; *Cook* v. *Redman,* 2 Ire. Eq. 623 ; *Clement* v. *Clement,* 1 Jon. Eq. 184; *Briggs* v. *Morris, Id.* 193; *Taylor* v. *Taylor, Id.* 246 ; *Riggs* v. *Swann,* 6 Jon. Eq. 118; *Baker* v. *Evans,* Winst. Eq. 109.

We see no occasion to alter any of the expressions in the

case under discussion. None of them imply that proof of *mere words* by the owner of the legal estate, will suffice to create a trust; or even that *mere words* will suffice to repel a presumptive trust, though how this last may be, we are not called upon to say. Indeed, it is hard to conceive of a case which could be founded on words only, without some corroborating acts and circumstances.

How does the case stated in the plaintiff's bill, stand in connexion with the matters really decided in Shelton's case? Allen Ferguson owned certain lands; judgments had been obtained, and executions issued against him by John Ferguson and one Langston; these were levied on his land: Allen conveyed the land to John by deed; no money was then paid to Allen; John agreed, by words, to pay off the executions, *for* half the land, and to hold the other half for Allen; in pursuance of the agreement, John bid off the land at the execution sale; during the lives of Allen and John, and for several years, they used and possessed the land in common, according to the agreement; the heirs of John now claim the whole. This is the general case, stated as simply as possible, and with the omission of a great number of circumstances,—such as the mortgage to Earnst, &c.,—which are alleged merely as evidence of the material parts of the case. Thus viewed, this bill is certainly not an attempt to create a trust by mere words; it states a case of a conveyance without consideration, in which a trust resulted to the grantor. John, being a trustee for Allen, could not better his condition by his purchase at the execution sale. Therefore, evidence of the acts, dealings and declarations of the parties becomes competent, to ascertain the nature and limits of the trust which is to be attached to the legal estate. This is so wherever a trust is presumed by construction of law, and it would seem to be only saying the same thing in another form, to say that it is so in every case where there

is a transmutation of the possession by deed, and, by any means, other than the declaration of an express trust in writing, the trust becomes disjoined from the legal estate.

The decree of the Judge below is affirmed; the plaintiffs will recover costs.

PER CURIAM.                              Affirmed.