J. O. NELSON and others v. GEORGE WHITFIELD and others.

*Evidence—Presumption of Regularity—Relevancy—Declarations against Interest—Hearsay—Demurrer to Evidence.*

1. The fact that a will was found in a book kept by the clerk of the court of pleas and quarter sessions, as required by law, is proper evidence to go to the jury of the existence of the will of the supposed testator and of its due probate and registration, (where the original will and court records have been destroyed by fire).

2. On the trial of an issue as to the existence of a will, it is competent to show that a paper purporting to be such was publicly read at the funeral of the alleged testator, in the presence of the heirs at law, who afterwards assert that their ancestor died intestate.

3. Declarations of persons in possession of land, characterizing their possession, are admissible in evidence, when made in disparagement of their title.

4. It is admissible to prove, as against an heir denying the existence of a will, that a writing alleged to be such, was taken by one of the devisees in the presence of the heir, from a tin box containing other valuables, and read over in the presence of the heir.

5. The foregoing testimony is not obnoxious to the objections which apply to "hearsay."

6. Upon a demurrer to parol evidence, when the same is loose and indeterminate, or circumstantial, the court will not compel the adverse party to join in the demurrer, unless the other party will distinctly admit upon the record every fact and conclusion which the evidence offered conduces to prove.

(*Yates* v. *Yates,* 76 N. C., 142; *Kirby* v. *Mastin,* 70 N. C., 540; *Harrell* v. *Hare, Id.,* 658; *Mercer* v. *Wiggins,* 74 N. C., 48, cited and approved.)

SPECIAL PROCEEDING heard on appeal at Fall Term, 1878 of PITT Superior Court, before *McKoy, J.*

This is a petition for partition commenced before the clerk of Pitt superior court. The plaintiffs allege that the *feme* plaintiff and the defendants, George Whitfield and Mary the wife of Robert Whitehurst, and some others, are the heirs at law of one Benjamin Whitfield, who died intestate in Pitt

county in the year 1840, seized and possessed of the land in controversy ; that they are tenants in common, and they pray that partition may be made of said land.

The defendants on the contrary say it is not true that Benjamin Whitfield died intestate, but that he left a last will and testament which was duly admitted to probate in the court of pleas and quarter sessions of Pitt county soon after his death, and was recorded in said court; that the original will with the records of said court was destroyed by fire, when the court house was burned in the year 1858; and that the testator devised the one half of said land in dispute to his wife, Temperance Whitfield, until his son, Jesse T. Whitfield, should come of age, and then to the said Jesse in fee ; and the other half of said land to the said Temperance during her life, and upon her death, to the said Jesse in fee.

The issue raised by. the pleadings in the proceeding before the clerk was transmitted to the superior court to be tried by a jury, when the jury were impaneled and the following issue submitted to them—" Did Benjamin Whitfield, deceased, die leaving a last will and testament, and was the same duly admitted to probate, by which will he devised one half of the land whereof he died seized, to his wife, Temperance, until Jesse T. Whitfield, his son, should come of age, and the other half to his wife, Temperance, for life and· after her death to his son, Jesse T. Whitfield."

There is no direct proof in the case that the court house, with the records of the courts of the county, was burned.

On the part of the defendant, evidence was given by the testimony of one Cherry, that he was present at the burial of Benjamin Whitfield in the year 1840, being then twelve or thirteen years old, and heard a paper twice publicly read in the presence of the crowd there assembled, as the last will and testament of Benjamin Whitfield, which gave one-half of his land to his wife until his son Jesse arrived at twenty-one years of age, and then to Jesse in fee, and the other half

to his wife during her life and then to the said Jesse in fee; that the plaintiffs, Elizabeth and Artemisia, were present in the crowd, but did not know whether they heard the will read or not; that he did not read the paper and knew nothing of its contents except as he heard it read; that he had heard Temperance, the widow of Benjamin Whitfield, while in the possession of the land, say that she held under the will of her husband. This portion of the witness's testimony was objected to, and the objection overruled. He further testified that Jesse Whitfield became of age and married in 1853, and took possession of and cultivated one-half of the land until he died, and his widow lived there until her marriage; that then the guardian of the defendants, the children of Jesse, in 1859 took possession of that part and rented it out until the death of Temperance, when he took possession of the whole and rented it out until the children became of age, and they have held the possession ever since; that Elizabeth lived with her mother until her marriage with the plaintiff, Nelson, and Artemisia lived with her until her death.

Henry Sheppard was next examined as a witness on the part of the defendants, and testified that about the year 1857, or 1858, (but was not certain) while clerk of the county court of Pitt county he copied the will of Benjamin Whitfield from the will-book, but did not remember for whom it was copied, nor did he recollect anything of its contents.

The defendants then proved by Patience Manning, the widow of Jesse Whitfield and mother of the defendants, that she married Jesse Whitfield in December, 1853, and they lived with Benjamin Whitfield's widow until the following July; that Jesse built a house on a part of the land, and they lived there; that in 1854, she heard what purported to be Benjamin Whitfield's will read by one Hopkins, and that Temperance requested her to get the will from a tin box where she found it among other papers and carried it to

Hopkins who read it aloud in the presence of Temperance, Artemisia and herself; that she has no knowledge of the contents of the will, nor whether it had witnesses, nor by whom it was signed, but she remembers that as she heard it read, it disposed of the land as testified to by the witness Cherry. . This evidence was objected to, and objection over- ruled.

One Gray Manning was then introduced and testified that in February, 1877, he heard Artemisia, one of the plaintiffs, tell his wife that it was reported that Elizabeth carried the will away, but that it was not so, for she had carried it away herself and had put it in a trunk from which it was stolen; that Elizabeth had administered upon the estate of her mother, Temperance, and that Artemisia could neither read nor write.

One Fred Bryan testified that he heard the paper read in 1853, and his recollection of its contents is substantially the same as that of the witnesses, Cherry and Patience Manning. This evidence was objected to, and objection overruled.

Defendants then proved by one Lee, that he became the guardian of Jesse Whitfield's children in the year 1859; the land was then in two lots, having been divided between Temperance and Jesse; that in 1866, Temperance died, and witness then took possession of the other part and rented it out. The "division papers" having been spoken of, the record of the partition between Temperance and Jesse was introduced, but no objection made, further than that the plaintiffs were not parties to the petition.

The plaintiffs then demurred *ore tenus* to the evidence that had been adduced on the part of the defendants, and the court declined to compel the defendants to join in the demurrer without their consent, which was not given. The jury found the issue submitted to them in the affirmative. The plaintiffs then moved for a writ of *procedendo, non ob-*

*stante veredicto,* which was refused and the plaintiffs appealed.

*Messrs. Gilliam & Gatling,* for plaintiffs.
*Mr. W. B. Rodman,* for defendants.

ASHE, J. This case has been imperfectly made up. It is remarkable that as all the evidence in the case is based upon the fact that the records of Pitt county were destroyed by fire, there is not a word of proof in the whole case that the court house with the records had been destroyed by fire in the year 1858. But from the pleadings, the character of the exceptions to evidence, and the argument of counsel, we must conclude that that fact was conceded.

At the date of the alleged execution of the will, the courts of pleas and quarter sessions had jurisdiction of the probate of wills, and were directed to order them to be recorded in proper books kept for that purpose. Rev. Stat., ch. 123, § 4. They were to be recorded in these books after probate had. The fact then that a will of Benjamin Whitfield was found in a book kept by the clerk of the court of pleas and quarter sessions in accordance with the requirements of law, is *prima facie* evidence of the probate of the will. *Omnia presumuntur rite acta esse.* There was evidence then to go to the jury of the existence of the will of Benjamin Whitfield, and that it had been duly proved and recorded. What were its contents? The original having been destroyed admits secondary evidence of its contents. And where secondary evidence may be resorted to, it is a rule that the next best evidence of which the subject is capable shall be adduced. Greenl. Ev., §§ 82, 84 and notes.

The plaintiffs excepted to the evidence offered by defendants as to the contents of the paper read at the burial of the testator. As no copy of the will is shown to be in existence we think there was no error in admitting that evidence.

The paper was twice publicly read in the presence of the crowd assembled to perform the last rites to the remains of the deceased. It was read as the last will and testament of the deceased. His daughters, Elizabeth and Artemisia, both being in the crowd and being his heirs, must have felt some curiosity to know what disposition their father had made of his property, and would reasonably be expected to give their attention to the reading of an instrument in which they were so deeply interested. It was just the occasion in some sections of the country which the family of the deceased and the neighbors impelled by curiosity embrace to ascertain whether the deceased left a will, and if so, what disposition he has made of the estate. It may be that the person who read the paper was the custodian of the will, and read it on the occasion to give information to all who might feel an interest in its contents. It was publicly read where the family of the deceased might have heard it, as *his will,* and soon thereafter *his will* was admitted to probate. It was some evidence, we think, fit to be left to the jury, whether it was not the will which was admitted to probate.

The next exception taken by the plaintiffs to the evidence was to the admissibility of the declarations of Temperance Whitfield while in the possession of the land. There was no error in the ruling of the court upon this exception. It is well settled that the declarations of persons in possession of land, explanatory of the character of the possession, are admissible in evidence, when in disparagement of their title. 1 Greenl. Ev., § 109 ; *Yates* v. *Yates,* 76 N. C., 142; *Kirby* v. *Mastin,* 70 N. C., 540. The evidence was pertinent as a circumstance tending to show a possession in conformity with the provisions of the will as contended for by the defendants.

The plaintiffs next excepted to the evidence offered by the testimony of Patience Manning. She was directed in 1854 by Temperance Whitfield, after some conversation among

the persons present, most reasonably to be supposed about the will, to bring it from a tin box where it was found among other papers, and it was read in the presence of Temperance, Artemisia and herself. It was read as the will of Benjamin Whitfield, and it contained a devise as alleged by the defendants. This exception was properly overruled. Temperance Whitfield being a devisee under the will of her husband would be most likely to keep by her a copy of the will as a muniment of her title, and its most natural place of deposit for safe keeping would be a trunk or box with her other valuable papers. It is reasonable to suppose that this was a copy, as the original must be presumed to have been filed with the clerk and destroyed by the fire. But it is objected that there is no evidence of any but one copy, that made by Sheppard. There may have been several copies taken in the lapse of years intervening between the probate of the will and the date mentioned · by Sheppard. And it is usual for an executor to procure a copy of the will of his testator, at the time of proving the will, for reference and guidance in the discharge of his duties under the will. It is reasonable to conclude that Temperance knew the contents of her husband's will that had been admitted to probate, but it is not reasonable to suppose that claiming the possession of the land under that will, she should preserve among her papers an instrument purporting to be his will which she knew was not his will. This most probably was the copy referred to by Artemisia in 1877 in conversation with the wife of the witness Gray Manning, which she said had not been carried away by Elizabeth, but by herself, and put in a trunk from which it was stolen. She was living with her mother when she died, and Elizabeth administered upon her estate, and they both must have had access to her papers. It was not error in His Honor to overrule this exception. There was some evidence to go to the jury that this paper called the will of Benjamin Whitfield was a copy of that instrument.

There was also an exception to the testimony of Fred Bryan, which was properly overruled. His testimony evidently must have reference to the same paper as that testified to by Patience Manning.

It was objected in the argument that the defendants' testimony in regard to the contents of the will, was hearsay. But we do not think it is obnoxious to that objection, any more than is the proof of an examined copy of the record in the usual way, by producing a witness who has compared it with the original, or with what the officer or some other person read as the contents of the record. It is not necessary for the persons examining to exchange papers and read them alternately both ways. Greenl. Ev., § 508.

The plaintiffs' counsel referred to several authorities upon the point of the competency of the evidence of the defendants, to wit, Redfield on Wills, 348; *Chisholm's Heirs* v. *Bem,* 7 Barr.; *Davis* v. *Segourny,* 8 Metc., and other decisions of that class; but on examination of them they were cases where lost wills were propounded for probate or sought to be established in chancery for the purpose of making records of the lost documents, and thereby perpetuating the evidence of their contents. In those cases the courts hold that they should act with great caution, and the proof must be strong, positive, and free from all doubt. But ours is a case not for probate, but to prove the contents of a lost record where secondary evidence is competent, and the best evidence is admitted that is within the power of the party offering the proof. Greene Ev., *supra,* and cases cited in note. *Harrell* v. *Hare,* 70 N. C., 658; *Mercer* v. *Wiggins,* 74 N. C., 48; *Gage* v. *Schroder,* 73 Ill., 44.

After the court had overruled the exceptions taken by the plaintiffs to the evidence offered by the defendants, they demurred *ore tenus* to the evidence adduced on the part of the defence, and asked the judgment of the court upon the demurrer. His Honor refused to require the defendants to

join in the demurrer and thereby withdraw the case from the consideration of the jury, without their consent. A demurrer to evidence withdraws a case from the jury, and it is laid down in Tidd's Practice, 865, that when the evidence is in writing, or if parol, is certain, the adverse party will be required to join in the demurrer; but when the parol evidence is loose and indeterminate or is circumstantial, he will not be required so to do, unless the party demurring will distinctly admit upon the record every fact and every conclusion which the evidence offered conduces to prove. This the plaintiffs declined to do, and there was no waiver of the objection on the part of the defendants.

We admit the evidence offered on the part of the defendants relating to the contents of the paper purporting to be the will was slight, and taken by itself might not have been sufficient to satisfy the jury of the contents; but it was some evidence, and when taken in connection with the facts proved, the long possession of the defendants and their ancestor in conformity with the alleged provisions of the will, and the long acquiescence of the plaintiffs in the exclusive possession of the land by defendants, it makes a very strong case for them.

There was no error in the ruling of the court below upon the demurrer and in the refusal to order a writ of *procedendo*, *non obstante veredicto*. Let this be certified to the superior court of Pitt county that a *procedendo* may be issued in accordance with this opinion.

No error.                                          Affirmed.