FANNIE H. PITTMAN v. P. ELIZA PITTMAN et al.

*Uses and Trusts—Parol Declaration—Evidence—Statute of Frauds.*

1. The seventh section of 29th Charles II has never been adopted in this State, and declarations of trusts are governed by the rules of the common law, and may be made by parol.

2. At common law, where there was no consideration, the use would result to the feoffor, unless the declaration of the use or trust was contemporaneous with the transmutation of the legal title.

3. Hence, it follows that a subsequent declaration in an unsealed writing, and without consideration, will not warrant the Court in declaring a trust.

4. Such a writing, being upon its face insufficient, and it being necessary, in order to make out the plaintiff's case, to connect it with the transfer of the legal title, it is competent for the owner of the latter to show that the conveyance was made by the plaintiff grantor with intent to defraud his creditors, and thus bar him of equitable relief.

5. Discussion by SHEPHERD, J., of uses and trusts, and the parol declaration thereof.

This was a CIVIL ACTION, tried before *Boykin, J.,* at Fall Term, 1889, of HALIFAX Superior Court.

Only so much of the facts need be repeated as is necessary to an understanding of the opinion of the Court.

On the 7th of October, 1871, Jno. B. Pittman, the plaintiff, conveyed the land in controversy to R. W. Pittman, and on the 18th of November, 1871, the said R. W. Pittman executed the following document:

"ENFIELD, HALIFAX COUNTY, N. C.,
November 18, 1871.

" *To J. B. Pittman, Parish of La Fourche, Louisiana.*

"DEAR BROTHER:—The property I bought of you the seventh day of October, 1871, for the sum of five hundred

dollars, will be tranferred to you again at any time you may wish, as I hold it in my name and for your benefit.

Your brother, truly, etc.,

R. W. PITTMAN.

Witness: R. A. PITTMAN."

In 1883, R. W. Pittman died, having devised the said land to the defendant P. Eliza Pittman, who afterwards executed the following document:

"ENFIELD, N. C., September 23, 1884.

" This is to certify, that I agree and bind myself to make .a deed for ninety-three .acres of land and improvements thereon, where I now live, and bounded west by R. A. Pittman's, south by Montgomery Whitaker's place, east by Merritt tract, belonging to me, north by main run, Beech Swamp. I agree to make this deed any time John B. Pittman or his agent may require it, as I hold it as his trustee, for him and his benefit.                · P. ELIZA PITTMAN.

Signed in the presence of these witnesses.

Witness: R. A. PITTMAN."

Both of these instruments were registered. The land remained in the possession of R. W. Pittman up to the time of his death, and has since that time been in the possession of the defendant.

The defendant tendered the following issues, which were accepted by the Court:

1. Was the land conveyed to R. W. Pittman with intent to hinder, delay and defeat the creditors of John B. Pittman?

2. Are the plaintiffs estopped to claim this land?

3. Was the agreement of September 23d, 1884, founded on any valuable consideration?

4. Was said agreement founded on a consideration against ·good morals?

After the introduction of the above paper-writings, the defendant offered to prove that the conveyance made by the plaintiff to R. W. Pittman was made with intent to defraud his, the plaintiff's, creditors. The Court excluded the testimony. The defendant excepted, and there was a verdict and judgment for the plaintiff. The defendant moved for a new trial, which was refused, and defendant appealed.

There was no other evidence as to the existence or declaration of the alleged trust, except the said writings; there was no other evidence of any consideration for the writings, but it was admitted that there was none.

*Messrs. T. N. Hill* and *W. H. Day*, for plaintiffs.
*Mr. R. O. Burton, Jr.,* for defendants.

SHEPHERD, J.: The plaintiff seeks the equitable aid of the Court for the purpose of having the defendant declared a trustee for his benefit, in respect to a certain tract of land of which the defendant is legally seized in fee.

It appears that on the 17th of October, 1871, the plaintiff, upon the apparent consideration of five hundred dollars, conveyed the land in question to R. W. Pittman, who devised it to the defendant in this action.

The evidence in support of the alleged trust consists of two unsealed paper-writings, one signed by R. W. Pittman, the grantee of the plaintiff, and the other by the defendant, his devisee. These writings declare that the subscribers hold the land in trust for the plaintiff, and that they are willing to execute title to him. The writings were made subsequently to the transfer of the legal title, and appear to be entirely voluntary.

It is alleged by the defendant that the conveyance to her devisor was made for the purpose of defrauding the creditors of the plaintiff, and that, as the plaintiff does not "come

107—11

into equity with clean hands," he is entitled to no relief. *Turner* v. *Eford*, 5 Jones' Equity, 106; *Jackson* v. *Marshall*, 1 Murph., 323; *Vick* v. *Flowers*, 1 Murph., 321; *York* v. *Merritt*, 77 N. C., 213.

Testimony was offered tending to establish this defence, but, upon objection, it was excluded by the Court, and the defendant excepted.

We suppose that His Honor excluded this testimony upon the grounds that the writings, upon their face, entitled the plaintiff to the relief demanded, and that, as he was not compelled to resort to the original transaction (that is, the transfer of the legal title) in order to make out his case, the testimony as to the alleged illegal purpose was irrelevant. *North Carolina* v. *Bevers*, 86 N. C., 588.   We can conceive of no other theory upon which the testimony was rejected; for if the writings, by any reasonable construction, relate to the transfer of the legal title, the testimony would have been plainly admissible, as the plaintiff would necessarily be establishing his trust through a transaction which the defendant offers to show is tainted with fraud, and this, it is well settled, he cannot do.  See *Turner* v. *Eford*, and the other cases cited, *supra*.

Assuming, then, with His Honor, that the writings contained no evidence of a declaration of trust contemporaneous with the transmission of the legal title, or of any other antecedent obligation, we are confronted with the interesting question, whether the legal owner of land can be divested of his property by a simple voluntary parol declaration that he holds it in trust for another.   The seventh section of the statute of 29 Charles II, requiring "all declarations or creations of trusts or confidences of any lands, tenements or hereditaments shall be manifested and proved by some writing signed by the party," &c., has been very generally adopted in the United States, and the doctrine of the declaration of express trusts, as laid down by the various text

writers, is based almost entirely upon decisions of the Courts since the enactment of the said statute. As the above provision is not embraced in our statute of frauds, it, therefore, becomes necessary that we should inquire into the manner in which express voluntary trusts in land could be created at common law. *Foy* v. *Foy*, 2 Haywood, 131. Doubts were at one time entertained whether trusts could be created by parol, but it is well established that this could be done at common law, both as to real and personal property. "A trust in realty, like a use, was, in technical language, 'averable,' that is, could be created by word of mouth." The better opinion is, however, that this is only true of those cases in which the legal estate could be created by feoffment, where, of course, no writing was necessary. But where a deed was requisite for the conveyance of the legal estate (as in covenant to stand seized to uses), these uses and trusts were not averable, but could be created only in the same manner as legal estates. Bispham's Prin. Equity, 95; Hill on Trustees, 86; Gilbert on Uses, 270

Trusts and uses were raised in the same manner, and if a feoffment was made without consideration, a use resulted to the feoffor, unless the use or trust was declared at the time of the conveyance. Now, it must be observed, that no consideration was necessary to a feoffment. The conveyance itself *raised* the use and separated it from the legal estate. The use so raised, would, however, as we have said, in the absence of a consideration, result to the feoffor, unless declared at the time of the feoffment, and this declaration might be voluntarily made by parol, either in favor of the feoffee or of a third person. But there was a great difference, in this respect, between a conveyance which operated by transmuting the possession, and the covenant to stand seized, which had no operation but by the *creation of a new use;* and, as this use was raised by equity, and equity never acts without a consideration, a consideration was always nec-

essary to the transfer of the interest by this conveyance; whereas, in the case of a feoffment or fine, the use arises upon the conveyance itself. * * * It seems, therefore, that at common law, only the solemn conveyance, by livery or record, could raise the use by its own virtue, and dispense with the deed declaring it, as well as the *consideration* for raising it. Roberts on Fraud, 92. ' It appears, then, that at common law, no use or trust can be raised in lands without a consideration, except in the single instance of a conveyance operating by transmutation of possession, the character of the conveyance alone being sufficient to raise the use, and to dispense with the necessity for a consideration.

This view is distinctly approved in *Wood* v. *Cherry*, 73 N. C., 110, where it is said by PEARSON, C. J., that a trust can only be created in one of four modes: "1. By transmission of the legal estate, when a simple declaration will raise the use or trust. 2 A contract, based upon a valuable consideration, to stand seized to the use or in trust for another. 3. A covenant to stand seized to the use of, or in trust for, another upon good consideration. 4. When the Court, by its decree, converts a party into a trustee, on the ground of fraud." See also *Frey* v. *Ramsour*, 66 N. C., 466; *Shields* v. *Whitaker*, 82 N. C., 516; Malone Real Property Trials, 487.

Counsel for plaintiff called our attention to passages to be found in 2 Pom. Eq. Juris., §§ 996, 997; 1 Lewin on Trust, 68, and other works, to the effect (as stated in Bispham's Eq. Juris., 102), that "where a settler is possessed of the legal title to the subject-matter of the settlement, he may create a valid trust thereof, either by a declaration that he holds the property in trust, or by the transfer of the legal title to the property to a third party, upon certain trusts. In other words, he may constitute either himself or another person the trustee. If he makes himself the trustee, no transfer of the subject-matter is necessary." We have examined, with much care, the cases cited in support of this very general

proposition, and especially those collected in the English and American Notes to *Ellison* v. *Ellison,* the leading case upon voluntary trusts (White & Tudor's Leading Cases, Vol. 1, par. 1). As far as our researches have extended, we can find no decision which authorizes the application of the principle stated, to a case like ours. The cases are somewhat conflicting, and chiefly concern the voluntary disposition of choses in action and equitable interests in land. These being in England, and many of the States, incapable of transfer at law, and equity requiring a consideration, it followed that no gift could be made of them, as in the case of things passing by delivery, or other legal methods of transfer. To obviate this difficulty, it was held that if the owner declared himself a trustee in respect to such property, equity would give to such declarations the same effect as the law would give to a gift of property susceptible of, and perfected by, a legal assignment. The doctrine, it seems, was extended to cases where the owner had a right to make a legal transfer of the property, and the decisions disclose many refined distinctions and much conflict of judicial opinion, leaving us without any very clear and well-defined principles upon which the doctrine, as thus extended, is to be administered. We think, however, that it was not intended to apply where the law *requires,* as in the case of land, a certain method of transfer, and this view is well sustained by Judge HARE in *Bond* v. *Hunting,* 28 P. F. Sm., 210. "It was established," he says, "at an early period, that the transfer of the legal title in trust for a third person would vest the beneficial interest in the latter. Such was the origin of uses, and subsequently of trusts. A declaration of trusts, under the circumstances, substantiates the existence of a duty which would be obligatory, independently of the declaration. But it does not follow that an admission can give rise to a fiduciary obligation where none exists.

The ordinary power of a chancellor (said GIBSON, C. J., in *Reade* v. *Robinson*, 6 W. & S., 329) extends no further than the execution of a trust sufficiently framed to put the title out of the grantor, or to the execution of an agreement for a trust, founded on a valuable consideration; and the language of the same Judge, in *Morrison* v. *Beirer*, 2 W. & S., 86, shows that he regarded a declaration of trust as inoperative, where it did not rest on an antecedent obligation.

In this uncertainty, we may revert to principles. A declaration of trust by the owner of property in favor of a volunteer, has no peculiar efficacy. It is simply a gift, which derives its force from the will of the donor. As applied to land, it is consequently invalid if not under seal, and perhaps even then, unless the estate lies in grant. Where the law prescribes the mode of conveyance, it must be followed. When, however, there are no legal means of transfer, any words expressing an intention to confer a present interest may be effectual in equity. This reasoning is supported by Sir John Romily, M. R., in *Bently* v. *Mackey*, 15 Beavan, 12, who says that, in all cases where the legal owner intends voluntarily to part with the property in favor of other persons, the Court requires everything to be done which is requisite to make the legal transfer complete. See also Pomeroy Eq. Juris., § 998, and note.

In *Thompson* v. *Branch*, 10 Tenn., 390 (Meigs), we have a case directly in point. It is there decided, that "an unsealed written acknowledgment or memorandum by a party clothed with the legal title to land, that another is interested in a certain number of acres, will not raise a trust to convey the quantity specified without proof of a consideration paid to the party making the acknowledgment or memorandum." The Court said: "We cannot recognize the principle contended for. The legal title was in Joseph Branch. If he is forced to part with that legal title, it must be upon the

ground that he holds it in trust for John Branch. But how can a trust be raised without a consideration?"

In view of the above reasons and authorities, we are of the opinion that the writings relied upon by the plaintiff, are not in themselves sufficient to entitle him to relief; and that, inasmuch as he must, in the absence of a consideration, connect the declaration with the transmission of the legal title, the testimony tending to show the fraudulent purpose of the conveyance was erroneously rejected. It may be that the greater security afforded by the seventh section of the statute referred to, has encouraged some departure from the ancient rules of the common law upon the subject under consideration, but in North Carolina, where we have no such statutory protection, and where express trusts in land may still be declared by parol, very grave considerations of public policy forbid any relaxation of the rules of the common law in this respect. To declare a trust in this case, would contravene several other principles which have been firmly established by this Court, one of which is, that no parol trust can be proved by subsequent declarations *alone*. *Smiley* v. *Pearce*, 98 N. C., 185. Again, this Court has decided, that in the absence of legislation, no peculiar efficacy is to be given to a parol declaration, simply because it happens to be in writing, and that, upon principle, it is of no higher dignity than one which is purely oral. *Williams* v. *Hodges*, 95 N. C., 32. Now, if this be so, and we hold that these declarations are sufficient, it will be difficult to escape what would seem to be the logical conclusion, that a voluntary trust may be declared by a simple oral declaration, unaccompanied by the transfer of the legal title. We are not prepared to adopt a principle which must necessarily result in a serious impairment of the stability of titles to land in this State, and we are deeply impressed with the conviction that the only "sure and safe way" is to adhere strictly to the principles of the common law in reference to this important subject.

There must be a new trial.