ABE LEFKOWITZ v. MILTON SILVER ET AL.

(Filed 2 November, 1921.)

**1. Trusts—Parol Trusts—Statute of Frauds.**

A parol trust may be established against the one holding the legal title, our statute not having enacted and being silent with regard to the seventh section of 29 Charles II., requiring that "all declarations or creation of trusts or confidences in any lands, etc., shall be manifested and proved by some writing signed by the party," etc.

**2. Same—Evidence—Legal Title.**

Where one of the parties to a parol agreement, acting upon the confidence he placed in another has orally agreed with him to purchase certain lands, to be held by them both jointly or in common, through their agent, chosen by the former, if it could be done at a price not exceeding a certain sum, and that other, acting independently and secretly, has fraudulently acquired the title through another source at the contemplated price, pending these negotiations, and has, himself, paid the purchase money, these facts may be shown by parol evidence, and engraft upon the legal title the trust that the owner hold it upon the terms of the parol agreement pending at the time of its acquisition.

**3. Same—Ex Malificio—Fraud—Intent—Contracts.**

It is not required to engraft a parol trust *ex malificio* upon a legal title held by another, that a consideration be shown, for this is done by the law itself to prevent the holder of the legal title acquired by his own fraud or wrong from taking advantage of his unconscionable act.

**4. Trusts—Ex Malificio—Evidence—Deeds and Conveyances—Quantum of Proof—Questions for Jury—Instructions—Trials.**

In order to engraft an ordinary parol trust, or a trust *ex malificio* by parol, upon the legal title to lands, it must be established by strong, cogent, and convincing proof, which is to be determined by the jury upon the evidence under a proper instruction from the court.

APPEAL by defendants from *Webb, J.,* at the May Term, 1921, of FORSYTH.

This action, in the nature of a suit in equity, was brought by the plaintiff to set up a parol trust in an undivided one-half of the tract of land described in the pleadings, and in order to pass upon the motion of the defendants to nonsuit the plaintiff, it will be advisable to state the issues and the contentions of the parties, which will be done almost in their own language, and, at least, substantially so. There was evidence, we think, to support the respective claims of the parties. The verdict was as follows:

"1. Did the defendant, M. Silver, verbally agree with the plaintiff that they would purchase and hold jointly the premises described in the complaint at the price of $40,000? Answer: 'Yes.'

"2. Did the plaintiff Lefkowitz, by any words or act on his part, or failure on his part to comply with the terms of his contract, waive or abandon his rights under the contract, if you find there was such a contract? Answer: 'No.'

"3. If so, did the defendant, M. Silver, in violation of that agreement, purchase said premises and take title to himself and to his codefendant? Answer: 'Yes.'

"4. Was the plaintiff ready, able, and willing to pay his part of the purchase price? Answer: 'Yes.'

"5. Did the plaintiff demand of the defendant, M. Silver, that he convey, or cause to be conveyed to him, the one-half undivided interest in said premises? Answer: 'Yes.'

"6. Did the defendant, M. Silver, acquire, and does he now hold title to one-half undivided interest in the premises described in the complaint, as a trustee for plaintiff, as alleged in the complaint? Answer: 'Yes' (the court answered 'Yes')."

1. Plaintiff contended that the verdict of the jury establishes that the plaintiff and the defendants verbally agreed that they would purchase and hold jointly the premises described in the complaint at the price of $40,000; that the plaintiff did not waive or abandon his rights under that agreement by any words or acts on his part, or by his failure to comply with the terms of the contract; that the defendant, in violation of the agreement, purchased the premises, took title to himself and to his codefendant; that the plaintiff made demand on the defendant to convey to him, in accordance with the original agreement, a one-half undivided interest in the premises; and that the plaintiff was ready, able, and willing at all times to pay his part of the purchase price. Upon the foregoing findings of fact by the jury, the court, as a matter of law, by answering the sixth issue, adjudged that the defendant acquired and held title to a one-half undivided interest in the premises described in the complaint as a trustee for plaintiff. In support of the allegations of the complaint, and as a basis of the foregoing findings of fact by the jury, the plaintiff offered evidence showing that the defendant, a resident of High Point, came to the plaintiff's place of business in Winston-Salem, seeking a business location in that city. After discussing the matter generally, and in answer to defendant's inquiry as to whether the plaintiff knew of a piece of property in Winston-Salem that could be bought, the plaintiff told the defendant that he thought the property described in the complaint could be bought at $40,000. As a result of this conversation, the defendant proposed that they buy it together— the property belonging to Mr. Harris, of Baltimore. Whereupon, the plaintiff and defendant went to the office of Mr. Fletcher and employed him to negotiate the purchase with Mr. Harris. This visit to Mr. Fletcher's office was on 18 September, and that afternoon Fletcher called in Mr. Hurdle, of the Hurdle Loan & Insurance Company, and in the presence of Mr. Hurdle, Mr. Fletcher dictated a letter to Mr. Harris, which will be found in the record, and had Mr. Hurdle to sign it. A reply to this letter was received from Mr. Harris in two or three days, which was shown to Fletcher and by him communicated to Lefkowitz. Another letter was written under similar conditions on 22 September, and Harris' reply to that letter was shown to Fletcher. While these

negotiations were going on, the defendant, through his brother, who was in Baltimore, opened up direct negotiations with Harris, and on 22 September, 1919, entered into a contract of purchase for the land in behalf of himself and his mother, which contract of purchase was later followed by a deed from Harris. Claiming that under the circumstances the defendant could not, without a breach of confidence and his agreement with the plaintiff, purchase the property for himself, plaintiff brought this suit, seeking to have the defendant declared a trustee to the extent of a one-half undivided interest and a conveyance from the defendant to the plaintiff for that interest in the land. Silver came to Lefkowitz seeking information as to where he could buy a store in Winston-Salem. Lefkowitz informed him that he knew of such a store, and that he desired to become associated with Silver in his purchase. Upon Silver consenting to this, Lefkowitz disclosed to him the property in question. It was agreed that if the property could be bought for $40,000, or less, that a *joint* purchase of it should be made. The parties went to Mr. Fletcher and arranged with him to negotiate with the owner for the property upon the terms just stated. While these negotiations were under way, Silver buys the property for himself. Silver secured the information which enabled him to make the purchase by agreeing with Lefkowitz that he should become a joint owner.

2. The defendants' version of the case was, and they so contend, that the defendant Silver was a resident of High Point; he called on the plaintiff Lefkowitz in Winston-Salem the latter part of August, 1919, and asked him if he knew of a store for rent. The plaintiff suggested renting the Winston Clothing Company's building, but the rent the defendant would have had to pay was considered too high. About the first week in September following the defendant returned to Winston-Salem and again saw the plaintiff; he suggested to plaintiff that the best thing to do would be to buy the Winston Clothing Company's place, but that he could not do so alone, and suggested that they buy it together. Defendant asked plaintiff where they could get information about the building, and plaintiff suggested going to see Mr. J. H. Fletcher. They went together to see Mr. Fletcher and secured from him the name of the owner, the size of the lot, and of the building, and such other information as Mr. Fletcher could give. Upon leaving Mr. Fletcher's office, defendant asked plaintiff if he meant business, and if he did, that each would put up $500 to pay cost of negotiating the trade, and they would get some one to go to Baltimore to see if they could buy the property. The plaintiff replied, according to the contention of the defendant, that he was not able to buy the building, and the plaintiff and defendant had no further transactions in regard to the purchase.

Two days later the defendant's brother went to a hospital at Baltimore, and the defendant had him to get in touch with the owner. After several interchanges of messages, terms were agreed to, and on 22 September, 1919, the defendant went to Baltimore and bought the building for himslf and mother at the price of $40,000. But he concealed the fact from Lefkowitz.

The plaintiff contends, however, that no suggestion was made to him by the defendant to put up any money to negotiate the trade with the owner, and that he did not waive any of his rights to become the purchaser with the plaintiff under the original agreement.

The court charged the jury as follows:

"The first issue submitted for your consideration is this, Did the defendant, M. Silver, verbally agree with the plaintiff that they could purchase and hold jointly the premises described in the complaint at the price of $40,000?

"How do you find that issue to be? The burden of that issue is on the plaintiff to satisfy you, by the greater weight of the evidence or by the preponderance of the evidence, that such an agreement was made by and between the plaintiff and defendant, and if the plaintiff has satisfied you by the greater weight of the evidence that such an agreement was made by and between the plaintiff and defendant, that is, that the plaintiff and defendant agreed between themselves that they would purchase the property in controversy, that they should be joint owners of it, that each one was to pay half of the purchase price, and it was agreed between them that the deed should be made to them as tenants in common, made to both of them—if plaintiff has satisfied you by the greater weight of the evidence that such a contract and agreement was made, though verbally, it would be your duty to answer the first issue 'Yes.' "

Judgment for plaintiff, and defendants appealed.

*Hastings & Whicker, Holton & Holton, and Manly, Hendren & Womble for plaintiff.*

*Carter Dalton, Swink & Hutchins, and O. O. Efird for defendants.*

WALKER, J., after stating the material part of the case: The substance of the plaintiff's contention is that there was an agreement between him and Silver that they should buy the land together for their joint benefit, each contributing one-half of the purchase money, the deed for the land to be made to them as tenants in common, or each to own an undivided one-half thereof, and that the defendant, Milton Silver, thwarted their plan, and the consummation of their purpose, while Fletcher, as their agent, was negotiating for the purchase, by circum-

venting Fletcher and the plaintiff and buying the property for himself, taking the deed from Harris to himself and his mother in equal moities. Silver did not notify plaintiff of what he intended to do, and afterwards did not, but acted in that respect secretly and clandestinely, with a view of concealing his actions and enabling him thereby to secure the legal title before plaintiff was aware of what he was doing or had done. If the plaintiff can establish these facts, and there are other pertinent ones of which there was evidence, he is entitled to go to the jury upon the allegation of his complaint as to the trust. Whether there was such fraud and circumvention, or evil practice, on the part of Silver as would constitute him a trustee *ex malificio* as to an undivided one-half of the land for the plaintiff, or not, we will discuss later in this opinion, as there is evidence of a parol trust created before the transmutation of the possession, or the conveyance of the legal title to Silver and his mother, which will carry the case to the jury. *Sykes v. Boone,* 132 N. C., 199-202. Why do not the facts thus appearing and found create a parol trust in favor of the plaintiff which is enforceable in a court of equity? We think they did. It is familiar learning that a trust may be created in any one of four modes:

1. By transmission of the legal estate, when a simple declaration will raise the use or trust.

2. By a contract based upon valuable consideration, to stand seized to the use or in trust for another.

3. By covenant to stand seized to the use of or in trust for another upon good consideration.

4. When the court, by its decree, converts a party into a trustee on the ground of fraud. *Wood v. Cherry,* 73 N. C., 110.

With reference to this classification by *Chief Justice Pearson,* we held in *Sykes v. Boone, supra:* "The trust in this case comes within the first class, as a declaration of trust was made at the time of the execution of the deed and the conveyance of the legal estate. A trust when so declared is not within the statute of frauds. Nor does it require a consideration to support it. If the declaration is made at or before the legal estate passes, it will be valid even in favor of a mere volunteer," citing *Blackburn v. Blackburn,* 109 N. C., 488; *Pittman v. Pittman,* 107 N. C., 159.

In the *Blackburn case, supra,* it was held:

1. The grantor, before the delivery of a deed which he had signed conveying a tract of land to another, made, under seal, this endorsement: "I (the said E. B.) do hereby certify that S. B., a daughter of said E. B., doth hold a lifetime possession in the said deed": *Held,* to amount to a declaration of a trust in favor of the said S. B., and that the grantee took the title subject thereto.

2. An oral declaration of a trust, made contemporaneously with the transmission of the title, may be established, even without a consideration. No particular form of words is necessary.

*Justice Shepherd* says substantially, in the opinion and referring to *Pittman v. Pittman, supra,* as deciding the same thing: We think, however (without passing upon the question whether the language used can be construed into a covenant to stand seized to uses), that the judgment of his Honor may be sustained on the ground that the endorsement, made before or at the time of the delivery, amounted to a declaration of trust, to wit, that the grantee should hold the land for the use of the said Sarah for life. Even without consideration, an oral declaration of trust in favor of a third person, made contemporaneously with the transmission of the legal title, will, when established by competent testimony, be recognized and enforced in a court of equity: *Pittman v. Pittman,* 107 N. C., 159. If this is so, *a fortiori* will the Court give effect to such a contemporaneous declaration when made in writing under seal and for a good consideration. No particular form of words is necessary to establish such a trust. The intent is what the courts look to, citing Fonblanque on Equity, 36, note 3; 3 Vesey, Jr., 9; Bispham on Equity, 98. He then adds: The language in our case is very similar to that used in *Fisher v. Fisher,* 10 Johns., 494, which was held to be sufficient, and, indeed, upon looking over the many cases in the reports, there can be no doubt upon the question. The grantee, then, taking the title accompanied with this contemporaneous declaration, must be declared seized of the land in trust for Sarah Blackburn for the term of her natural life. It will be observed that the very able justice (who was profoundly learned, both in the principles of equity as well as in those of the common law) states that an oral declaration, under our statute of frauds, which does not include trusts, as does the English statute, is just as valid and enforceable as one that is written, so that those cases are directly applicable here, and they may also be relied on as meeting fully another objection of the defendant that there was no consideration for the agreement upon which the trust is founded.

*Justice Shepherd,* who also spoke for the Court in *Pittman v. Pittman, supra,* said in substance in that well-considered case: Trusts and uses were raised in the same manner, and if a feoffment was made without consideration, a use resulted to the feoffer, unless the use or trust was declared at the time of the conveyance. Now, it must be observed, that no consideration was necessary to a feoffment. The conveyance itself raised the use and separated it from the legal estate. The use so raised would, however, as we have said, in the absence of a consideration, result to the feoffor, unless declared at or before the time of the feoffment, and

this declaration might be voluntarily made by parol, either in favor of the feoffor or of a third person. But there was a great difference in this respect between a conveyance which operated by transmuting the possession, and the covenant to stand seized, which had no operation but by the creation of a new use; and, as this was raised by equity, and equity never acts without a consideration, one was always necessary to the transfer of the interest by this conveyance; whereas, in the case of a feoffment or fine, the use arises upon the conveyance itself. . . . It seems, therefore, that at common law, only the solemn conveyance by livery or record could raise the use by its own virtue and dispense with the deed declaring it, as well as the consideration for raising it. Roberts on Fraud, 92. It appears, then, that at common law no use or trust can be raised in lands without a consideration, except in the single instance of a conveyance operating by transmutation of possession, the character of the conveyance alone being sufficient to raise the use and to dispense with the necessity for a consideration. There are numerous cases approving and affirming those we have cited.

The same justice, in the *Pittman case,* considers very fully the effect upon parol trusts in this State produced by our failure or refusal to adopt the seventh section of the English Statute of Frauds, and he argues on the assumption that the writings in that case contained no evidence of a declaration of trust contemporaneous with the transmission of the legal title, *or of any other antecedent obligation.* He then states that we are confronted with the interesting question, whether the legal owner of land can be divested of his property by a simple voluntary parol declaration that he holds it in trust for another (which, of course, means after the legal title has vested in him). The seventh section of the statute of 29 Charles II, requiring that "all declarations or creations of trusts or confidences of any lands, tenements or hereditaments shall be manifested and proved by some writing signed by the party," etc., has been very generally adopted in the United States, and the doctrine of the declaration of express trusts, as laid down by the various text-writers, is based almost entirely upon decisions of the courts since the enactment of the said statute. As the above provision is not embraced in our statute of frauds it, therefore, becomes necessary that we should inquire into the manner in which express voluntary trusts in land could be created at common law. *Foy v. Foy,* 3 N. C., 131. Doubts were at one time entertained whether trusts could be created by parol, but it is well established that this could be done at common law, both as to real and personal property. A trust in realty, like a use, was, in technical language, averable, that is, could be created by word of mouth. The better opinion is, however, that this is only true of those

cases in which the legal estate could be created by feoffment, where, of course, no writing was necessary. But where a deed was requisite for the conveyance of the legal estate (as in covenant to stand seized to uses), these uses and trusts were not averable, but could be created only in the same manner as legal estates. Bispham's Pr. of Equity, 95; Hill on Trustees, 86; Gilbert on Uses, 270. We must not overlook the fact that now, and for a long time past, registration operates in lieu of livery of seizin. Pell's Revisal, sec. 979, notes and cases.

The cases we have cited (*Sykes v. Boon* and others), as to parol trusts, have since been specially approved by this Court. *Avery v. Stewart,* 136 N. C., 426; *Gaylord v. Gaylord,* 150 N. C., 222; *Harrell v. Hagan, ib.,* 242, and other cases, some of them being cited in *Avery v. Stewart, supra,* 439-441. See, also, 39 Cyc., 82-85, and notes where the cases in this and other jurisdictions are collected. *Justice Avery* said in *Cobb v. Edwards,* 117 N. C., 245, at p. 251: "It is not material whether the proof in this case does or does not come up to the strict requirement in that class of cases (just considered), since a different rule is applicable where the plaintiff simply seeks by evidence of a previous or contemporaneous agreement to engraft upon the deed of a purchaser at a judicial sale a trust to hold the legal estate for others who are to repay the purchase money advanced by him. In such cases, the proof of an agreement existing at the time of the sale, that the purchaser was to buy for the benefit of the claimant must be strong, clear and convincing, and must be supported by evidence equally strong of facts or circumstances inconsistent with a purpose on the part of the purchaser to hold the land for himself, but the latter purpose may be manifested by conduct subsequent to the sale. As to the quantum of proof required, the rule is the same as where the equity grows out of furnishing the purchase money to another who takes title to himself, though, as already stated (and as this forms a resulting trust), no agreement need be shown in the latter class of cases," citing *Williams v. Hodges,* 95 N. C., 32; *Ferguson v. Haas,* 64 N. C., 772; *Link v. Link,* 90 N. C., 235; *Mulholland v. York,* 82 N. C., 510; *Vestal v. Sloan,* 76 N. C., 127; *Vannoy v. Martin,* 41 N. C., 169. At page 253 it is added: "The judge has no more right, when the testimony, if believed, is sufficient to be submitted to the jury, to determine in the trial of civil actions what is strong, clear and convincing proof than he has in the trial of a criminal action to express an opinion as to whether guilt has been shown beyond a reasonable doubt." The rule as to strong, cogent and convincing evidence must be given to the jury, but they must say at least whether it is such.

But whether we should hold this to be a parol trust or a trust *ex maleficio* (that is, one growing out of fraud, misdoing or tort), which

perhaps it more strictly is, the rule of evidence and intensity of proof· is the same, because in both cases there is parol evidence, or may be. The latter kind of trust, called a trust *ex maleficio,* or *ex delicto,* is also known as a constructive trust, and arises entirely by operation of law without reference to any actual or supposed intention of creating a trust, and often directly contrary to such intention. It is entirely in *invitum,* and is forced upon the conscience of the malefactor, who will be declared a trustee because of his wrong or fraud, for the purpose of working out right and justice, or frustrating the fraud. It is otherwise defined as a trust not created by any words either expressly or impliedly evincing a direct intention to raise a trust, but by the construction of equity in order to satisfy the demands of justice; or a trust raised by construction of law, or arising by operation of law, as distinguished from an express trust; or one that arises when a person clothed with some fiduciary character, by·fraud or otherwise, gains some advantage to himself; or is such as is raised by equity in respect to property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds the legal title. 39 Cyc., 27, and notes 86 and 87.

Whether a parol, express, resulting or constructive trust, it is established by the same kind of evidence, not in the deed, but extraneous thereto, or dehors the deed, as we say. But the result is the same. It is not an attempt to set aside the deed. That relief is not prayed, but plaintiff asks that defendant be declared to hold the legal title he has acquired by his fraud "in trust for the use and benefit of the plaintiff, as to one-half interest in the said property, and that· he be ordered to convey one-half fee simple interest in the same to him." If he had merely asked that the deed be set aside for fraud practiced upon him, the case of *Harding v. Long,* 103 N. C., 1, would apply, and the evidence of plaintiff would be required to preponderate only. *Justice Avery* said in the case of *Cobb v. Edwards, supra,* 253: "If, as counsel insisted, there is any language used in the *obiter* statement of the rule in *Harding v. Long, supra,* or in *Ely v. Early,* 94 N. C., 1, repugnant to what we have said, such expressions must be considered so far modified as to bring those cases into perfect harmony with the law as it has been formulated in this case." Let us apply these principles.

The plaintiff contends that Silver holds the legal estate in trust upon these grounds, because of his wrong or fraud in betraying the plaintiff's confidence in him:

"1. There was an express agreement that the property should be purchased and held jointly.

"2. Silver obtained the information that enabled him to make the purchase as a result of the confidence Lefkowitz was induced to repose in him because of Silver's promise that the purchase should be joint.

"3. Silver was the agent of Lefkowitz to buy one-half interest," citing *Allen v. Gooding,* 173 N. C., 93; *Russell v. Wade,* 146 N. C., 116. See, also, 26 R. C. L., 1233 *et seq.; Wilson v. Jones,* 176 N. C., 205; *Brogden v. Gibson,* 165 N. C., 16. These positions may be well founded, and two of them perhaps are.

But we think the judge committed an error as to the intensity of the proof when he charged that a mere preponderance was sufficient to set up a parol trust, as the evidence must be strong, cogent and convincing. This has been thoroughly and finally established by our cases. *Cobb v. Edwards, supra,* and cases cited in the note to the annotated edition.

*Justice Allen* said in *Taylor v. Wahab,* 154 N. C., 219, at pp. 223 and 224: "We also think there was no error in the charge of his Honor, and that the rule laid down for the guidance of the jury, as stated in the part of the charge quoted, follows the decisions of this Court. *McNair v. Pope,* 100 N. C., 408; *Hamilton v. Buchanan,* 112 N. C., 471; *Kelly v. McNeill,* 118 N. C., 353; *Wilson v. Brown,* 134 N. C., 405. It is well settled in this State that where competent evidence is introduced to establish a parol trust, it is the duty of the judge to submit it to the jury, and it is for the jury to say whether it is 'clear, strong, cogent and convincing.' *Cobb v. Edwards, supra; Lehew v. Hewitt,* 130 N. C., 22; *Avery v. Stewart,* 136 N. C., 430. The enforcement of parol trusts is recognized in this State, but it is a jurisdiction in the exercise of which there is much danger. As said by *Pearson, J.,* in *Kelly v. Bryan,* 41 N. C., 286: 'Courts of equity enforce parol trusts to prevent fraud, but the jurisdiction is exercised sparingly, and many think with very doubtful policy.' The Court in *Avery v. Stewart, supra,* while discussing the rule as to the intensity of the proof required, says: 'The security of titles required the adoption of this rule.' As a further safeguard, the law clothes the presiding judge with the power to supervise the verdict and to set it aside in proper cases. The doctrine is fully and clearly discussed in the case of *Avery v. Stewart,* cited above, and in the case of *Sykes v. Boone,* 132 N. C., 199, both of which are conclusively against the plaintiff." And Cyc., Vol. 39, at pp. 84-85, thus summarizes the doctrine here and elsewhere: "A higher degree of proof than a mere preponderance of evidence is required to establish an express trust. Some of the cases go to the extent of requiring the evidence to be so conclusive as to exclude all reasonable doubt; but the more common requirement is that the evidence be clear, explicit and convincing, not only as to the existence of the trust, but as to its terms and conditions.

The rule requiring the evidence to be clear and satisfactory is especially applicable where the trust is attempted to be proved by parol evidence, as well as where it is sought to convert into a trustee a person holding the legal title to property ostensibly as absolute owner," because according to this view, it tends to alter, add to or vary the deed. *Lehew v. Hewett,* 138 N. C., 6, where the rule of evidence is stated to be that the trust must be shown by proof strong, cogent and convincing, but after giving this rule to the jury, they must decide whether it measures up to the standard required, just as they decide in ordinary civil cases whether the proof of plaintiff preponderates, or in criminal cases whether the State has established the crime beyond a reasonable doubt. There are very many cases of this character, but we will cite only two more of them, *Lamm v. Lamm,* 163 N. C., 71, and *Boone v. Lee,* 175 N. C., 384, as the learned counsel for plaintiff supposed there was some inconsistency between the last two cases, but we are of the opinion that there is absolutely none, and that the supposition that there is must be more imaginary than real. The *Lamm case* was cited in the *Boone case,* as directly sustaining the rule as we have herein stated it to be, and in the very opening of the opinion, the learned judge who delivered it so states the distinction most clearly between the two classes of cases just as it is stated in the *Boone case,* and in all those cited by us, without any variableness or shadow of turning. Both the cases are in perfect line with our formcr decisions, without the least deviation therefrom.

The error of the court as to the intensity of the proof entitles the defendant to another trial, and it is so ordered.

New trial.