ANDREW LINK and others *v.* CALEB LINK and others.

*Trusts and Trustees—Execution of parol trust—Fraud—Pleading.*

1. In an action to enforce a parol trust, it appeared that in pursuance of an agreement a purchaser at execution sale was to hold the land until his bid and other debts of the defendant in the execution were paid, and that, then, the purchaser was to convey to a son of the said defendant in trust for the father and his family. This was accordingly done, but the deed to the son was absolute upon its face; *Held,* that the court will enforce the trust.

2. *Held further:* The question of fraud not being suggested by the answer or raised by the pleadings, it was error in the court below to refuse judgment upon the ground that 'the arrangement was for the purpose of defrauding creditors of the defendant in the execution.

3. *Held also:* The action being to engraft upon the legal estate an equity created by parol, and not for reforming the deed, no allegation that the conditions were omitted by mistake or fraud in drafting the deed is necessary.

(*Kelly* v. *Bryan,* 6 Ired. Eq., 283; *Clement* v. *Clement,* 1 Jones' Eq., 184; *Briggs* v. *Morris, Ib.,* 193; *Brown* v. *Carson,* Busb. Eq., 272; *Briant* v. *Corpening,* Phil. Eq., 325; *Bonham* v. *Craig,* 80 N. C., 224; *Mulholland* v. *York,* 82 N. C., 510; *Shields* v. *Whitaker, Ib.,* 516; *Cheek* v. *Watson,* 85 N. C., 195; *Gidney* v. *Moore,* 86 N. C., 484, cited and approved).

CIVIL ACTION tried at Fall Term, 1883, of CATAWBA Superior Court, before *Graves, J.*

The plaintiffs appealed.

*Messrs. Hoke & Hoke* and *Battle & Mordecai,* for plaintiffs.
*Messrs. R. Z. Linney* and *Armfield & Armfield,* for defendants.

SMITH, C. J. The plaintiffs, the widow and heirs-at-law of the intestate, Jacob Link, with their husbands in this action against Caleb Link and Catherine, wife of John Campbell, the other heirs-at-law, seek to charge the estate in the tract of land described in the complaint, and vesting in said Caleb, with a trust in favor of the widow and heirs-at-law, and to enforce its execution.

The complaint alleges that during the life-time of the intestate, the said land then belonging to him was sold under execution by the sheriff and conveyed to the plaintiff, Alexander Goodson, under an agreement previously entered into, that the latter should hold the title until reimbursed the purchase money, and the other debts of the intestate were paid, and then, at the majority of said Caleb, to convey the said land to the latter in trust for the intestate and his heirs.

That in April, 1848, a year after the execution sale, the said Alexander disposed of some gold mining privileges in working the land for the sum of $500, from which he retained the amount of his advances, and soon afterwards executed a deed for the premises to the said Caleb, and also paid over to him the residue of the purchase money under an express agreement that the land should be held upon the same trusts which attached to it when held by the said Alexander.

That the said Caleb and his father, Jacob, resided on the land after the sheriff's sale, as before, enjoying with other of the intestate's children its use and occupation, from which and the fund received from said Alexander, the said Caleb has discharged all the debts of the said Jacob.

And this arrangement was made in regard to the land in consequence of the intemperate habits of the intestate, to prevent the waste and improvident disposal of the property and to preserve it in the family for the common support of its members.

The defendant, Caleb, who alone answers, denies the allegations of fact upon which the trust is raised, and avers that he paid for the land and it was conveyed to him absolutely and as his own.

The action was instituted on February 6th, 1880, and after many continuances was brought to trial at fall term, 1883, of Catawba superior court, upon issues then framed and submitted to the jury, which, with the responses, are as follows:

1. Did Alexander Goodson become the purchaser at sheriff's sale and acquire the legal title to the land described in the complaint, under a parol trust that he would hold the land, until he was refunded his purchase money, and until other debts were paid, and until Caleb Link, the defendant, became (of age omitted), and that he would then convey the same to the said Caleb Link to hold as trustee for the benefit of Jacob Link and his heirs?

2. Did the said Alexander Goodson execute and deliver to said Caleb Link a deed in fee simple, absolute on its face, for the said land, but in faith upon the condition that the said Caleb Link should hold the said land for the benefit of the said Jacob and his heirs?

To both these enquiries upon the evidence introduced without objection, and, as we must infer, sufficient to warrant the findings, the jury responded in the affirmative.

The court refused the plaintiffs' motion for judgment, and being of opinion that if a parol trust was declared, it was in pursuance of an arrangement to defraud creditors, which the court would not enforce; and further, that the complaint was fatally defective in not alleging " that the terms or conditions were omitted from the deed by surprise or ignorance, or mistake

or fraud," rendered judgment for the defendants and the plaintiffs appealed.

There was no issue raised by the pleadings to be submitted to the jury, in reference to the fraudulent purpose imputed by the court to the original arrangement between the debtor and Goodson, his son-in-law, in reference to the latter's becoming the purchaser; nor do we find any evidence of such purpose in the testimony delivered. No such defense is set up in the answer, and while the plaintiffs' averment that the object was to guard against the consequences of the disposal of the property by an intemperate man, to the injury of those who looked up to him for support, and preserve it for their common benefit, is denied, the defendant has not relied on his denial so far as to propose an issue as to the intent. The transaction is not disclosed as belonging to that class which a court of equity will not lend its aid to enforce, because illegal or in contravention of public policy.

On the contrary, the complaint in direct terms alleges (article 4), that the purchaser at the execution sale was to " hold the land until he was repaid his said bid and *until other debts of the said Jacob Link were paid,*" making the discharge of both conditions precedent to the conveyance to the said Caleb.

The second ground assigned for refusing the plaintiffs' motion for judgment is the absence of any allegation that the terms of the several deeds were left out from surprise, ignorance, mistake or fraud, and that this was necessary to warrant the interference of the court in reforming them in accordance with the intention of the parties to each.

The cases cited for the appellee abundantly show that such averments must be made and supported by facts dehors the agreement and in corroboration of it, in order to the reformation of the deed so as to carry out the common intent not expressed upon its face. *Kelly* v. *Bryan,* 6 Ired. Eq., 283; *Clement* v. *Clement,* 1 Jones' Eq., 184; *Briggs* v. *Morris, Ib.,* 193 ; *Brown* v. *Carsons, Executor,* Busb. Eq., 272; *Briant* v. *Corpening,* Phil. Eq., 325; *Bonham* v. *Craig,* 80 N. C., 224.

But the object of the present action is not to correct and · reform the deeds, for they are just such as they were intended to be; but to engraft upon the legal estate an equity created by parol, and to compel the performance of the duties assumed and involved in the trust as incident to the legal estate.

The validity of such a trust, as is averred in ·the complaint and found by the verdict of the jury, is in our opinion fully supported by the case of *Mulholland* v. *York*, 82 N. C., 510, where the authorities are collected and examined, and in the reasoning by which it is sustained.

It would be a result greatly to be regretted, if the defendant Caleb, without advancing any money in payment and accepting a conveyance of the title upon a positive undertaking to hold land for the use of his father and the family, of which he was himself a member, could not be compelled to execute the trust. It would be to enable him to consummate a positive fraud and enjoy, unrestrained, its ill-gotten fruits.   The prevention of the fraud invites the exercise of the equitable jurisdiction of the court, and it is accomplished by recognizing and compelling the discharge of the trusts upon whose assumption he was enabled to secure the title to the property.

In addition to *Mulholland* v. *York, supra,* we refer to *Shields* v. *Whitaker*, 82 N. C., 516 ; *Cheek* v. *Watson*, 85 N. C., 195 ; *Gidney* v. *Moore*, 86 N. C., 484.

There is error and the plaintiffs are entitled to judgment upon the verdict.

Error.                                        Reversed.