ROWAN JONES v. ELIZABETH EMORY et al.

*Evidence—Competency of Witness—Transaction with Deceased Person—Interest.*

1. The true test of the competency of a witness under the exception contained in section 590 of *The Code* is, whether he bears such a relation to the controversy that the verdict and judgment in the case may be used against him as a party in another action; if not, he is not disqualified; therefore,

2. In the trial of an action to recover land, a person living as a member of plaintiff's household on the land and aiding in her support, is not a party so "interested in the action" as to be incompetent to testify in regard to a transaction with a deceased father of the defendants.

3. In the trial of an action to recover land, wherein a parol trust was claimed, testimony that the plaintiff had entered upon the land more than twenty years before the trial under a bargain with defendants' grantor, a son-in-law of plaintiff's father, and had built a house thereon, paid taxes and lived thereon undisturbed, claiming the property as her own, with her invalid father until his death, and that the proceeds of the sale of certain articles had been applied in payment of the purchase-money by her or for her benefit, together with an explanation of the reason for the conveyance of the title to defendants' ancestor instead of to plaintiff, was sufficient to go to the jury as tending to establish the parol trust.

This was a CIVIL ACTION, tried before *Hoke, J.*, and a jury, at February Term, 1894, of WAKE Superior Court.

Plaintiff, who was a daughter of Willis Emory, deceased, seeks to establish a parol trust in a tract of land, or lot, the legal title to which is in defendants, who are the children and widow of W. C. Emory (called Clint Emory), deceased, who was brother of plaintiff and son of said Willis. Plaintiff offered evidence tending to show that she had moved upon the lot in controversy more than twenty years ago, under a bargain with one Saintsing, who was a son-in-law of Willis Emory; that she had built a house upon the land, and had lived in same with her invalid father and mother until their death, and since that time had resided on the lot, claiming to own same, paid taxes on it, etc.; that W. C. Emory, deceased, father of defendants, owned and lived on a lot adjoining the one in controversy, and had taken the legal title from Saintsing to plaintiff's lot by direction of Willis Emory, the purchaser in trust, to hold same for plaintiff's benefit.

The reason given for this arrangement was that prior to the execution of the deed from Saintsing for the lot in controversy, Willis and Clint Emory had made their exchange and this would save the execution of so many deeds. That Willis Emory had a horse and a gun and some other personal property, and these had been sold and proceeds had been applied in payment for the lot in controversy and for the use and benefit of plaintiff. Defendant offered the deeds from Saintsing to their father, W. C. Emory, for the lot in controversy, and offered evidence tending to show that W. C. Emory was a laboring man, making fair wages, and that Willis Emory, the father, was an invalid and poor, etc.

Saintsing having testified that he had made no bargain with plaintiff about the land, and Ephriam Emory, one of plaintiff's witnesses, testified that he had lived with Willis Emory, who was his uncle, until he died, and helped support

him, and since that time had lived on the lot with plaintiffs, boarding there and helping to support plaintiff; that he had no legal or other pecuniary interest in the lot in controversy nor in the action, but if plaintiff lost her suit he would have to move from the land. He then was permitted to testify that in a controversy between Willis and W. C. Emory, who were both dead, he heard the arrangement under which W. C. Emory took the deed for the lot in trust for plaintiff. Defendant objected because W. C. and Willis Emory were dead at the time and he had a disqualifying interest. Overruled, and defendants excepted.

The evidence was as follows:

Mrs. Jones: " W. married Jones and then Small; both are dead before suit brought; W.'s father and mother were invalids; father twenty years and mother five years before death were under doctor's treatment; W. contracted with defendant Robert Saintsing to buy a piece of land for forty dollars; doctors advised W. to move her mother out of town; went out, occupied lot and built a house on it twenty-one years ago last January; father lived there with W., and W. has lived there ever since, claiming the lot as her own; lot was in shape of three-cornered; W. paid the taxes on property; taxes paid, receipt shown; father died in 1880."

*Cross-examined.*—" W. contracted for land from Robert Saintsing twenty-two years ago, and has lived on it twenty-one years. Bargain was made before W. ever moved on lot."

Ephriam Emory: " W. lives on land and has for fifteen years; is nephew of Willis Emory, and lived with him and took care of him until he died, and has lived on the land since; has no legal interest in controversy, but supposes he would have to remove from land if plaintiff lost possession."

Defendant objected to question as to what took place between Willis and Saintsing and W. C. Emory—Willis Emory and W. C. Emory being dead; overruled and defendants excepted. W. C. Emory recognized Willis Emory's

ownership by exchanging a part of his own land for a slip off this to improve shape.   Heard conversation between Willis and Saintsing.   Saintsing says, 'Old man, suppose I make Clint a deed and let him make you one.   This will only require two deeds, whereas if I make a deed to you, owing to swap, there will be four deeds necessary.'   It was then agreed upon that Saintsing should make the deed to Emory, and he was to make the deed to W.'s father.   Willis, the father, was acting for Mrs. Jones, plaintiff.   W. paid Saintsing $20 in money in 1874; old man Emory furnished money; it was taken for him; he had a horse and a gun, etc.; his daughter supported him.   Boundary 107 x 150 x 90 x 68."

*Cross examined.*—" Conversation took place out in yard; Willis Emory was not bed-ridden continuously; Clint Emory got regular wages; W. was a carpenter first and then became a farmer."

John S. Thompson: "W. is a party defendant, having married one of the children of Willis Emory."

Defendant introduced in evidence a deed from Saintsing to W. C. Emory, February, 1870, and a deed from John Devereux to W. C. Emory, 14th September, 1886.

R. A. Saintsing: "Rowan Jones never made any bargain with W. for the purchase of the land, and W. never had any conversation with her on the subject.   Willis Emory was sick with rheumatism sixteen or seventeen years; helpless a great deal of the time, and was very poor.   Was never present at conversation between Rowan Jones and others, as she testifies."

*Cross-examined.*—" W. is defendant and has filed no answer."

Mrs. Emory (now Mrs. Glenn): "Willis Emory was sick and poor and did not work any.   W. was never present at any conversation between Rowan Jones and Ephriam Emory."

George W. Perry: "W. wrote the deed at the request of Mr. Saintsing."

The issues submitted were as follows:

1. Did W. C. Emory take a deed for the lot in controversy from Robert Saintsing in trust, to hold the same for the use and benefit of plaintiff?

" 2. Did W. C. Emory take and hold the deed for the lot in controversy in trust for Willis Emory, his father?"

The Court charged the jury that if they answered the first issue " Yes," they need not respond to the second issue.

" That ordinarily, in determining an issue in a civil suit, plaintiff was not required to establish his claims by the greater weight of the evidence, but on the case at bar such was not the rule as to the character of proof. That the deed as written was presumed to express the contract of the parties, and would not be disturbed unless the plaintiff established her claim by clear, strong and convincing proof, etc. That if the jury were so satisfied that Willis Emory, having bought and paid for the land in controversy, if Willis Emory, having bought and paid for the land from Robert Saintsing, caused same to be conveyed to W. C. Emory, under an arrangement, or with the direction at the time, that W. C. Emory would hold for his daughters' benefit and convey same to her, Emory would hold in trust for her; same result if land bought and paid for by father, who gave direction it should be conveyed for his daughter's benefit prior to conveyance, the conveyance being after made pursuant to this direction and purpose. If Willis Emory, the father, bought and paid for the land not specially for his daughter but for himself, and caused the deed to be made to W. C. Emory for his own benefit, under an arrangement, or with the direction at the time or before, the deed being made pursuant to direction, defendant would hold in trust for estate of Willis Emory. If for daughter, first issue should be answered Yes, and need not answer second issue. If not for daughter but for himself, first issue No; second Yes. If for neither—not established by the clear strong proof—deed holds, and both issues No."

The Court then recited the evidence pertinent to the issues. There was a verdict for plaintiff on the first issue.

Defendant moved for a new trial—

1. For error in ruling on the question of the evidence of Ephriam Emory.

2. For error in the charge—for that there was not sufficient evidence to establish a parol trust under the rule of law as to such claim.

Motion overruled, and defendant excepted, and from the judgment on the verdict for plaintiff, the defendant appealed.

*Mr. Armistead Jones*, for plaintiff.
*Mr. T. R. Purnell*, for defendants (appellants).

Avery, J.: The general rule (*The Code*, § 589) is that no person offered as a witness shall be excluded on account of his interest in the event of the action. The exception (*The Code*, §590) is that neither a party interested in the event of the action, nor anyone from, through or under whom such interested person derives his *interest or title* by assignment or otherwise, shall be examined as a witness, etc., concerning a personal transaction or communication between the witness and the deceased person. The witness Ephriam Emory lived with the plaintiff on the land in controversy and helped to support her. If she should lose the suit he would seek a home elsewhere with her, but he had no legal or pecuniary interest in the lot in controversy. The statute does not disqualify every witness who, in the broadest sense of the term, is interested in the event of the action, but only such as have a direct and substantial or (to apply the principle more exactly to the case before us) a direct legal or pecuniary interest in the result. Unless the witness bear such a relation to the controversy that the verdict and judgment in the case may be used against him as a party in another action, he is not disqualified to testify. The fact that the witness as a mem-

ber of the family must move out along with the servants of the
plaintiff, if the defendant should prevail in this suit, would
not, he being neither privy nor party, estop him from setting
up a claim to the land in a future action as against present
defendants.    Were this record offered in such a suit, it would
be *res inter alios acta*.    *Mull* v. *Martin*, 85 N. C., 406; *Wil-
liams* v. *Johnson*, 82 N. C., 288; *White* v. *Beaman*, 96 N. C.,
122.    When we ignore this test and give to the word " inter-
est," as used in statutes, a meaning so broad as to include
every person who stands in such a relation to the contro-
versy as would naturally be calculated to enlist his prejudices
for or excite favorable emotions in his breast towards the
party on whose behalf he is introduced as a witness, we
embark on a sea of uncertainty without chart or compass.
This same principle was evidently applied in *Lawrence* v.
*Hyman*, 79 N. C., 209, where the testimony of one of the
trustees of a church, who was a party, was excluded as to
such a transaction, while that of members who worshiped
in the congregation was admitted.    To show how unsatis-
factory it would prove to dispense with this test, one need
but recall the fact that every citizen is interested in having
good roads constructed in the county in which he resides,
but it does not follow that every such citizen is a proper or
necessary party to a proceeding to lay off a public road,
because the statute requires that every person interested must
be notified and allowed the opportunity to resist the order
asked for.    It has been held that in such cases a reasonable
construction, and one that can be applied as a test, must be
adopted.    11 Am. & Eng. Enc., 422; *Taylor* v. *Norval*, 88
Ill., 527.    So, too, we would say in common parlance that
every citizen of a county or of a State is interested in collecting
tax claimed as due to the county or State, when he has no
such direct legal or pecuniary interest as would make him
a proper party to a proceeding against a delinquent tax col-

lector. We think that there was no error in admitting the testimony of Ephriam Emory.

After the trial the defendant moved for a new trial on the ground that there was not sufficient evidence to establish a parol trust.

We think the testimony that the plaintiff had entered upon the land more than twenty years before the trial, under a bargain with one Saintsing, who was a son-in-law of Willis Emory, and had built a house upon it, and had paid taxes and lived thereon undisturbed, claiming the property as her own, with her father, Willis Emory, until his death; that the proceeds of a sale of a horse, a gun and other personal property had been applied in payment of the purchase-money by her or for her, and that exchanges of portions of the two lots had been from time to time made, together with reasons given, according to the witnesses, for agreeing to have title to both lots made to W. C. Emory, the father of the defendants, was sufficient to go to the jury as tending to establish the parol trust. *Shields* v. *Whitaker*, 82 N. C., 519; *Wood* v. *Cherry*, 73 N. C., 110; *Turner* v. *Eford*, 5 Jones' Eq., 106. The recognition of her right by W. C. Emory during his life by exchanging parts of two lots so as to throw both into better shape, grows in importance when considered with the fact that the controversy did not arise till after the death of both Willis Emory and W. C. Emory. If the testimony for the plaintiff is to be believed, in these exchanges the father of the defendants repeatedly recognized the rights and dominion of the occupant of the lot in controversy. This was a direct recognition of an adverse interest in her or her father. The other evidence tends to explain who was the claimant, and the jury have found that the consideration proceeded from, and the recognition of the right was intended for, the plaintiff. It is not material whether there was or was not conflicting evidence, if that offered by the plaintiff

was sufficient to go to the jury. *Smiley* v. *Pearce.* There was no error in submitting the issues to the jury.

· Affirmed.