J. H. COBB, et al v. SMITH EDWARDS.

*Parol Trusts—Purchase at Judicial Sale for Another—
Evidence—Province of Court and Jury.*

1. Where one buys land at a judicial sale having previously, in con-
   templation of, or at the time of the bidding, agreed to buy
   and hold it subject to the right of another to repay the pur-
   chase money and demand a reconveyance, a trust is created
   upon the transmutation of the legal estate, our statute not
   requiring that declarations of trust shall be manifested and
   proved by some writing.

COBB *v.* EDWARDS.

2. In such case, the proof must be strong, clear and convincing that the agreement was made before, in contemplation of or at the time of the sale and must be supported by evidence equally strong of independent facts or circumstances inconsistent with a purpose on the part of the purchaser to hold the land for himself.

3. Where, in the trial of an action in which it is sought to establish such a trust, it appears to the Court that there is no evidence of the kind required by law to entitle the plaintiff to the relief, he may so declare, but where such evidence does appear it is the duty of the court to tell the jury that the law requires clear, strong and convincing proof to show the agreement and that it is their province to determine whether the testimony offered does so convince them of its truth.

4. The purchaser at a judicial sale of the land of intestate was W., the husband of one of the four heirs of intestate. J., another heir, was guardian of the two remaining heirs, E. and C. C. testified that he heard J. ask W. to buy it at the sale and that he agreed to purchase it, and hold it till "we" could redeem it. Another testified that during the bidding W. asked another person not to bid, as he was bidding for J. and E. Another testified that he heard W. say that his wife and J. had asked him to buy the land for them, and he was going to do so. Another testified that W. said they had asked him to buy it, and he was going to buy it to keep it in the family. Another testified that W. said he would be willing for the heirs to have it back if they would pay his money and interest. Another testified that after the sale W. told him J. had asked him to buy it, and he agreed to, and, if they would pay the money back, he would convey the land back. Others testified to declarations of W. that he had bought it for them, and had turned it over to J. to rent, the rents to be paid to him till the debt for the purchase money was discharged; *Held*, sufficient to show an understanding that the land was to be bought for the heirs, according to their interests.

CIVIL ACTION, heard before *Brown, J.,* at May Special Term, of GREENE Superior Court, on the report of a referee and exceptions of defendants thereto. The exceptions were overruled and the defendant appealed. The facts are sufficiently stated in the opinion of Associate Justice AVERY.

*Messrs. J. B. Batchelor, G. M. Lindsay* and *S. Galloway,* for plaintiff.

*Mr. W. C. Munroe,* for defendant (appellant).

AVERY, J.: As the argument developed the fact that intelligent counsel differ widely in the interpretation of our own adjudications upon the subject of parol trusts, especially as to the nature and *quantum* of proof necessary to set them up, it is perhaps well to recur to first principles and begin at the foundation the discussion of the doctrine that has been built upon them.

Judge PEARSON in *Wood* v. *Cherry,* 73 N. C., 110, laid down the rule that trusts could be created only in one of four modes, viz., either by—

1. Transmission of the legal estate where a single declaration will raise the use or trust.

2. A contract based upon a valuable consideration to stand seized to the use or in trust for another.

3. A covenant to stand seized to the use of or in trust for another upon good consideration.

4. Where the court by its decree converts a party into a trustee on the ground of fraud.

Where it is proved satisfactorily that the purchaser at a judicial sale of land agreed with another previously in contemplation of, or at the time of bidding it off that he would buy and hold it when bought subject to the right of the latter to repay the purchase money and demand a reconveyance, it has been repeatedly held by this Court that the beneficial interest to which the agreement relates passes with the transmutation of the legal estate, because there is no such requirement in our statute as that contained in 29 Car., II, that declarations of trust shall be manifested and proved by some writing. *Shelton* v. *Shelton,* 5 Jones Eq., 292; *Pittman* v. *Pittman,* 107 N. C., 159; *Clonenger* v.

*Summit*, 2 Jones Eq., 513; *Cohen* v. *Chapman*, Phil. Eq., 94; *Hargrave* v. *King*, 5 Ired. Eq., 430; *Jones* v. *Emry*, 115 N. C., 158; *Thompson* v. *Newlin*, 3 Ired. Eq., 338. But where the grantor by a mere declaration engrafts upon his own deed a trust, the declaration must be neither prior nor subsequent to, but cotemporaneous with its execution. *Blount* v. *Washington*, 108 N. C., 230; *Smiley* v. *Pearce*, 98 N. C., 185. It is also settled law that where land is bought with the money of one person and is conveyed to another, the latter becomes *ipso facto* a trustee for him who furnished the money, without any express agreement between them, because the consideration raises a trust and the law will not permit the owner of the legal estate to fraudulently hold and enjoy the beneficial interest which rightfully follows the consideration. *Holden* v. *Strickland*, 116 N. C., 185; *Thurber* v. *La Roque*, 105 N. C., 301; *Leggett* v. *Leggett*, 88 N. C., 108. But where the legal estate is not conveyed, a trust cannot be raised by a parol declaration even though founded upon a valuable consideration and followed by actual occupancy and the erection of valuable improvements. *Frey* v. *Ramsour*, 66 N. C., 466; *Pittman* v. *Pittman*, *supra*.

It is contended for defendant that if there is evidence tending to prove an agreement, it is not sufficiently strong or sufficient in *quantum* to show that it was made before or at the time of the transmutation of the legal estate, nor is it sufficiently explicit in pointing out the *cestuis que trust* for whom the purchase was made.

Edward C. Cobb, one of the plaintiffs testified that he was about 19 years old when he heard his brother and co-plaintiff, James H. Cobb, who had been appointed by the will of Devereux Cobb guardian of the witness and the other plaintiff, his brother C. E. Cobb, asked W. H. Edwards if he would buy the land, and that Edwards said rather

COBB *v.* EDWARDS.

than see it go for nothing he would buy it, and thereupon agreed to purchase and hold it until "we" (which was meant for the owners under the will) could redeem it. J. H. Cobb deposed that while the sale was being made and after W. H. Edwards had bid about the amount of the indebtedness of Devereux Cobb's estate, J. M. Edwards raised the bid once or twice. Whereupon W. H. Edwards approached him and in the presence and hearing of the witness "requested him not to bid on the property as he was bidding it for witness and his brother E. C. Cobb." George Warrel testified that he worked with W. H. Edwards and was in the habit of chopping with him daily, and that he heard Edwards say that "Mrs. Edwards and James Cobb had asked him to buy the land for them and he was going to buy it for them." Mrs. Edwards and the three plaintiffs were the tenants in common of the land as devisees of Devereux Cobb and by decent from a deceased devisee, holding in the following proportions, to-wit: J. H. Cobb seventeen forty-sixths, J. T. Cobb eighteen forty-sixths, Smithey Edwards eight forty-sixths, and E. C. Cobb three forty-sixths. Robert Manuel testified that W. H. Edwards said before the sale "that they had asked him to buy it and he was going to buy it *to keep it in the family.*"

Haywood Edmundson "thought that Edwards told him, before, but knew he told him after the sale that he would be willing for the heirs to *have it back* if they would pay his money and interest." Alfred Sumner testified that Edwards told him after the sale that James Cobb kept coming to him to buy the land and he finally agreed to buy, and if *they would pay the money back, he would convey the land back.*

Besides, several other witnesses not only testified to subsequent declarations of Edwards that he had bought for

them, but that he had turned the land over to J. H. Cobb to rent out, with the understanding that the rents were to be paid to him (Edwards,) till the debt for the purchase money should be discharged. The possession was thus put in J. H. Cobb who according to the testimony of his brother afterwards turned it over to him, for a person holds possession either by himself, his servants or his tenants. The relation of landlord and tenant was certainly created, if we are to believe that in consequence of the declarations of Edwards the occupants leased from James H. Cobb and placed themselves in such a position that they were estopped to deny the tenancy under him or his title.

We think that the testimony taken as a whole was sufficiently explicit (if strong enough) to show on the part of W. H. Edwards as well as on the part of J. H. Cobb acting for himself and his two wards, an understanding that the land was to be redeemed or bought *back* by the the owners holding under the will according to their several interests. The inference might be plainly drawn that J. H. Cobb always spoke for himself and his two wards as it was his duty to do. It crops out also in the testimony that the wife of Edwards joined her brothers in the request to buy and that the object was to keep it in the family. When the plan of paying for it out of the rents was adopted, if we believe the testimony, the object was to make the land relieve the incumbrance with the obviously just result of restoring it to those who before owned it.

Admitting the principle contended for (1 Perry on Trusts, Sec. 77) we think that the proof tends to show with sufficient distinctness who were to be beneficiaries of the trust, if created.

In addition to the direct evidence that there was a prior agreement to buy and allow the owners to redeem, the plaintiffs offered testimony tending to show subsequent

declaration of Edwards, some of them expressive of his willingness at the time of making them to reconvey upon repayment of the purchase money, but others, which amounted to a clear acknowledgement that he had agreed with the plaintiffs, previous to the sale, to reconvey.

Without further recital of the evidence it may be stated in general terms that there was testimony tending to show an agreement made by Edwards with his wife and her brothers before the sale and that the terms of it were reiterated in a declaration made to James Edwards a moment before he was declared the highest bidder. The fact, proved by several witnesses that Edwards stepped aside and had some conversation, while the crier was offering the land, and that James had made one or more bids before, but none afterwards, tends strongly to corroborate the testimony as to what passed between them. While his subsequent declarations of the nature of the mutual understanding with his brothers-in-law and his wife would not of themselves have been sufficient to engraft the trust on the deed made to him, they were corroborative of the evidence that there was such an agreement existing at the time of the sale and therefore enforcible in equity. *Hamilton* v. *Buchanan,* 112 N. C., 463. The testimony that Edwards acknowledged the possession of J. H. Cobb for himself and co-tenants in common by directing the lessees of the land to apply to him for leases, and claiming only that the rents should be applied to the discharge of the debt and that he suffered J. H. Cobb to turn over the management to his brother, if believed, was a pregnant circumstance outside of the mere declarations tending to show the existence of the agreement at the time of the sale. The act of exercising dominion by the persons claiming to be the beneficiaries under the trust, with the assent and under the directions of the alleged trustee, and the

COBB *v.* EDWARDS.

refusal of the latter to assert any right except that to apply the rents to the debt (as the plaintiffs contend it was a part of the agreement to do) were, if believed, acts on the part of Edwards and the plaintiffs not only consistent with the existence of such an understanding and the mutual purpose to adhere to it, but inconsistent with a claim of absolute and unqualified ownership on his part. But this case is distinguished by both Chief Justice SMITH and PEARSON (*Shelton* v. *Shelton*, *supra*, and *Shields* v. *Whit aker*, 82 N. C., 516) from that class of suits in equity brought "to reform and correct a deed upon the ground of fraud, ignorance, mutual mistake or undue advantage" where evidence of mere declarations is held insufficient, and proof of matters dehors the deed and incompatible with the idea that it embodies the intent of the parties is required before equity will interfere. It is not material whether the proof in this case does or does not come up to the strict requirement in that class of cases, since a different rule is applicable where the plaintiff simply seeks by evidence of a previous or cotemporaneous agreement to engraft upon the deed of a purchaser at a judicial sale a trust to hold the legal estate for others who are to repay the purchase money advanced by him. In such cases the proof of an agreement existing at the time of the sale that the purchaser was to buy for the benefit of the claimants must be strong, clear, and convincing, and must be supported by evidence equally strong of facts or circumstances inconsistent with a purpose on the part of the purchaser to hold the land for himself, but the latter purpose may be manifested by conduct subsequent to the sale. As to the *quantum* of proof required, the rule is the same as where the equity grows out of furnishing the purchase money to another who takes title to himself, though, as already stated, no agreement need be shown in the latter class of cases.

*Williams* v. *Hodges,* 95 N. C., 32 ; *Ferguson* v. *Haas,* 64 N. C., 772; *Link* v. *Link,* 90 N. C., 235 ; *Mulholland* v. *York,* 82 N. C., 510; *Vestal* v. *Sloan,* 76 N. C., 127; *Vannoy* v. *Mortin,* 6 Ired. Eq., 169.

When it appears to the court that testimony has been admitted tending to prove an agreement antecedent to and in contemplation of the sale or cotemporaneously, so that it exists when purchase is made and that testimony has also been offerred tending to prove independent acts or admissions on the part of the purchaser inconsistent with the claim of absolute ownership, it is not the province of the court but of the jury to weigh the testimony and determine, as in other cases, where the quantum of evidence is fixed by law, whether it is sufficient according to the requirement of the law as stated to them by the court.   The court may declare that there is not evidence of the kind required by law to entitle the plaintiff to the relief sought, but were the judge to pass upon the credibility of a witness on account of interest or intelligence or the intrinsic character of his testimony, or upon the weight to be given to the evidence of one or all, where the testimony if believed, might be sufficient to establish a right to the relief asked, he would invade the province of the jury since the Constitution confers upon the courts no jurisdiction to pass upon the facts in any such case.   Where the Judge is not at liberty to say that there is no evidence of the kind required by the rule of law prescribed in such cases, it is his duty to tell the jury that the law requires clear, strong and convincing proof to show the agreement as well as the subsequent acts or admissions and that it is their province to say whether that offered does so convince them of its truth.

In *Berry* v. *Hall,* 105 N. C., 154, following *Ferral* v. *Broadway,* 95 N. C., 551, and in *Helms* v *Green,* 105 N. C., 251, this Court has declared that expressions used by

the Judges when discussing the facts as Chancellors in cases where it was proposed to impress a trust on deeds, were not to be considered as legal directions to juries exercising a similar province under the new system. The discussions, which indicate what convinced the minds of Chancellors in the opinions in Chancery cases, are often discussions of the facts when the Chancellor, performing the office now devolving on a juror, was endeavoring to reach his conclusions upon facts as distinguished from those of law founded upon them.

The Judge has no more right when the testimony, if believed, is sufficient to be submitted to the jury to determine in the trial of civil actions what is strong, clear and convincing proof, than he has in the trial of a criminal action to express an opinion as to whether guilt has been shown beyond a reasonable doubt. In *Hemphill* v. *Hemphill*, 99 N. C., 436, it was held that where the court was not asked to pass upon the question whether there was evidence dehors a deed such as would warrant its submission to the jury to show mistake in its execution, no exception could be afterwards taken to its sufficiency.

If, as counsel insisted, there is any language used in the *obiter* statement of the rule in *Harding* v. *Long*, 103 N. C., 1, or in *Ely* v. *Early*, 94 N. C., 1, repugnant to what we have said, such expressions must be considered so far modified as to bring those cases into perfect harmony with the law as it has been formulated in this case. The judgment of the court below is affirmed.

Affirmed.