## CYNTHIA TAYLOR, NANCY PUGH WILLIAM McMILLAN v. JAMES McMILLAN.

(Decided December 13, 1898.)

### *Parol Trust to Convey Land.*

Where a debtor's land is sold at execution sale and is purchased by the judgment creditor, who takes the Sheriff's deed, and pursuant to an arrangement subsequently made with the debtor and a friend who comes to his assistance receives satisfaction of his debt, and conveys the land to a son of the debtor, to be held upon a parol trust to convey back to the father, as soon as another judgment creditor is settled with, which settlement is made, but the son refuses to reconvey. Equity will enforce the trust, there being no intimation of fraud in the pleadings. *Link* v. *Link*, 90 N. C., 235.

CIVIL ACTION to enforce a parol trust by declaring the defendant a trustee of land, holding for the benefit of the widow and heirs at law of the late John McMillan, tried before *Coble, J.*, at July Term, 1898, of ASHE Superior Court.

The plaintiffs claimed as heirs of John McMillan, who died in possession; the defendant, a son of John McMillan, claimed to be owner of the land under a deed from John F. Greer.

The plaintiffs read in evidence the deed from John F. Greer to defendant, and then read in evidence the deposition of R. E. Pugh, husband of Nancy Pugh, one of plaintiffs, as follows :

Q. State what trade or arrangement John McMillan made with reference to this land in 1880; go on and give a full detailed statement of the whole transaction.

A. The old man, McMillan, said Greer had had his land sold, and asked me, if I could manage any way to help him get it back. I told him I would try; and after studying on it a few days, I went to Laurel Springs, Greer's home, James McMillan went with me, and I succeeded in making the trade with Greer about the land, and he agreed to take my father's notes as payment on the land, and we agreed upon a day for Greer to come down to said McMillan's and bind up the trade; and he came according to said agreement and we bound up the trade. I was to pay Greer his debt, which he claimed was something over $500 ; and in payment of this I let Greer have my father's notes, amounting to $466.23, and the balance of Greer's claim was paid with property of John McMillan, consisting of a mule and a cow or heifer, and Greer made the deed to James McMillan ; and after James McMillan and myself got back from Greer's, the old man, McMillan, took me and James McMillan out to ourselves and said he wanted one of us to take the land in our names; that Wash Ray had a judgment against the land, and if he took it back in his name said Ray would have the land sold again, and that he could not pay Ray at that time, but he would pay him and then he must have the deed to his land back, and James McMillan said he would take it, and he should have it back.

Q. Was there any agreement that James McMillan

should hold any of the land after the Ray debt was satisfied?

A. The agreement was that James McMillan would hold the deed only till the Ray debt was paid, when he should reconvey the land back to the old man.

G. W. Ray testified: That he held a certain judgment against John McMillan, amounting to about $80, and was paid the judgment by John McMillan. Settlement with me was sometime in 1895.

John McMillan died in September, 1895, in possession.

The defendant moved for judgment as of non suit, at the close of plaintiff's testimony, on the ground that the testimony offered by the plaintiff, disclosed that the land in question was conveyed to James McMillan for fraudulent purposes, at the instance of John McMillan to-wit: To hinder, delay or defraud one Ray in collecting a debt against John McMillan.

Motion allowed, and plaintiffs except and appeal.

*Mr. W. W. Barber,* for plaintiffs (appellants).
*Mr. R. A. Doughton,* for defendant.

FAIRCLOTH, C. J.: The object of this action is to have a parol trust declared and enforced on land. It is admitted that the land described was sold by the sheriff under an execution against John McMillan, the father of plaintiffs and defendant, and was purchased by, and a deed made to the judgment creditor, John F. Greer, conveying 114 acres. It is proved that at the time of this sale and subsequent agreement between said McMillan and the defendant (James McMillan), the former was indebted to one Ray by judgment in the sum of $80, which was subsequently paid off and satisfied by John McMillan, who then demanded a deed from the defendant. It was also proved that, after the sheriff's sale,

John McMillan requested the defendant to take the deed from Greer, saying "that Wash Ray had judgment against the land, and that if he took it back in his name, said Ray would have the land sold again, and that he could not pay Ray at that time, but he would pay him, and then he must have the deed to his land back, and James McMillan (defendant) said he would take it, and he should have it back."

John McMillan remained on the land till his death Ray, Greer and other witnesses gave evidence tending to show the above facts.

When the plaintiff's rested their case, the defendant moved judgment as of non-suit on the ground that the plaintiff's testimony "disclosed that the land in question was conveyed to James McMillan for fraudulent purposes at the instance of John McMillan, to-wit, to hinder, delay or defraud one Ray in collecting a debt against John McMillan." This motion was allowed and judgment of non-suit was entered and the plaintiff's appealed. That judgment is erroneous.

A court of equity will not interfere with a contract, if it be illegal and against State policy, where the parties are in *pari delicto*. *Grimes* v. *Hoit*, 55 N. C., 271.

Where A paid the purchase money for land and had title made to B on a parol trust for A it was held that such trust was not embraced in the Statute of Frauds. But where it appeared that the contract was made to defraud creditors, the Court will not interfere with the legal title. *Turner* v. *Eford*, 58 N. C., 106.

Where both parties to an action have united to defraud others, the public, or the due administration of justice, or in a transaction *contra bonos mores*, the courts will not enforce it against either party. *York* v. *Merritt*, 77 N. C., 213.

The defendant relies upon these and similar decisions, but, unfortunately for him, these decisions do not fit the facts in the present case. There is no allegation in the pleadings that the agreement between the defendant and his father was made to defraud any one, and the plaintiffs do not allege any mistake in the deed or deeds, and ask to have the deeds corrected. They insist that the deeds speak as intended by the parties, and they seek to impress a parol trust on the legal estate by the aid of the court of equity and to have the trust executed according to its terms and provisions.

The sheriff's sale put the land out of the creditor's reach and beyond the debtor's control ; it had been applied to his creditors ; and the agreement was made between the defendant and his father after the sale, and there is no suggestion of any fraudulent purpose on the ancestor's part, but it does appear that he was moved by the commendable purpose of rehabilitating himself and family at the old homestead. He paid Ray's debt, and the defendant has paid nothing for the land, and his position looks more in bad faith towards the old man than the evidence discloses against the old man. If the evidence be true, the defendant's conduct is inexcusable, and it appeals in vain to the conscience of this Court.

The plaintiff's rely on *Link* v. *Link,* 90 N. C., 235, which is precisely in point, and so conclusive that we think a reference to it and the cases cited therein, and to the subsequent case of *Hughes* v. *Pritchard,* 122 N. C., 59, is sufficient. In Link's case, *supra,* the parol agreement was made before and in anticipation of the sheriff's sale, and the agreement was enforced by this Court.

Error.