## SALLENGER v. PERRY.

(Filed April 1, 1902.)

EVIDENCE—*Negotiable Instruments—Husband and Wife.*

> Where a note made payable to a husband is attached by his creditors, he having claimed the same as his own, and he claims in the attachment proceedings that it belongs to his wife and was made to him by mistake, this fact must be established by clear, strong and convincing proof, not by a mere preponderance of the evidence.

FURCHES, C. J., and DOUGLAS, J., dissenting.

ACTION by K. and W. B. Sallenger, administrators of B. Sallenger and others, against J. W. Perry and others, heard by Judge *O. H. Allen* and a jury, at November Term, 1901, of the Superior Court of BERTIE County.

In April, 1893, Mrs. Bettie Sallenger, who was the wife of the plaintiff, K. Sallenger, was engaged in mercantile business in Bertie County, under the name and style of B. Sallenger & Co. At that time she was indebted to the defendant, J. W. Perry, who was then trading under the firm name of J. W. Perry & Co., in the city of Norfolk, in the sum of one thousand dollars, and for the payment of which indebtedness she, with her husband, the plaintiff, K. Sallenger, executed and delivered to J. W. Perry & Co. their note, securing the same by a deed of trust made to the other defendant, George B. Henneberry, upon two tracts of land belonging to Mrs. Sallenger. At the same time or shortly thereafter, the plaintiff, K. Sallenger, put into the hands of Perry & Co. nine notes, executed by J. B. Willoughby to him (K. Sallenger), amounting to $832. K. Sallenger in his complaint stated that the nine notes were delivered to Perry & Co. with the express understanding and agreement that Perry & Co. would collect them and place the proceeds to the credit of the $1,000 note, and that this agreement was made at the time the note was executed.

K. Sallenger alleged in his complaint and testified upon his examination that the Willoughby notes, though made payable to himself, were by mistake made so, and that they should have been made payable to his wife Bettie Sallenger; that they were given as the purchase-money of a tract of land belonging to her.    K. Sallenger alleged that he has paid most of the $1,000 bond and the defendant, J. W. Perry, admits the payment of several hundred dollars on the same.    There is an amount of $211.36, which the plaintiffs contend should be applied to the $1,000 note, but which the defendant says should be applied to a debt due by A. Sallenger to the J. W. Perry Co., a corporation formed in September, 1893, upon the discontinuance of the firm of J. W. Perry & Co.    The amount, $211.36, was from the proceeds of a lot of peanuts shipped by K. Sallenger to the J. W. Perry Co. in February, 1897, and was applied by the consignees to their debt against the consignor.    Sallenger in his complaint alleged, and as a witness testified, that he accompanied the shipment of peanuts with written instructions to the consignees to apply the proceeds of sale to the payment of the $1,000 debt due to the old firm of J. W. Perry & Co., by himself and his wife.    That was denied by the defendant.    In 1900, the J. W. Perry Co. attached seven of the Willoughby notes, which were in the hands of J. W. Perry, for the purpose of having them applied toward the payment of the K. Sallenger indebtedness to the J. W. Perry Co., and by proper proceedings the notes were sold and applied to that indebtedness.    J. W. Perry is a large stockholder in the J. W. Perry Co., and at his instance the J. W. Perry Co. instituted the attachment proceedings.    Mrs. Sallenger left several heirs-at-law, who have been made parties defendant, and she left no other real estate than that embraced in the deed of trust to the defendant Henneberry.    The trustee, Henneberry, advertised the sale of the land to pay the balance due on the $1,000 note, and the sale was enjoined

until the final hearing of the case. The complaint alleged and the plaintiff, K. Sallenger, testified that his wife died in 1895, and that she was indebted to various persons at the time of her death. From a judgment for the plaintiffs, the defendants appealed.

*Pruden & Pruden,* and *Shepherd & Shepherd,* for the plaintiffs.

*Marlin & Peebles,* and *B. B. Winborne,* for the defendants.

MONTGOMERY, J., after stating the facts. This action was brought by the plaintiffs, K. Sallenger and W. H. Sallenger, administrator of Bettie Sallenger, against the defendants, J. W. Perry and George Henneberry, to prevent the sale of the land and to have an account taken as to the amount which might be due upon the $1,000 note executed by Mrs. Sallenger and the plaintiff K. Sallenger to J. W. Perry & Co., with a view of declaring whatever balance may be found to be due, and for the return to the plaintiff W. H. Sallenger, administrator of Mrs. Bettie Sallenger, of the Willoughby notes for the purposes of administration.

The contention of the plaintiffs, of course, is that the Willoughby notes, though made payable to K. Sallenger, were nevertheless the property of Mrs. Sallenger, that they were deposited with the defendant J. W. Perry, trading as J. W. Perry & Co., as collateral security to the $1,000 note of Mrs. Sallenger, which was secured by deed of trust on her own land, and, therefore, that after the payment of the balance due on the $1,000 note, the Willoughby notes should be returned to her administrator in order that her debts might be paid and that her encumbered real estate might be relieved and descend to her children; and that the Willoughby notes could not be applied to the indebtedness of K. Sallenger to the J. W. Perry Co. It became the chief question in the case to find out who

was the real owner of the Willoughby notes. If Mrs. Sallenger was the owner, then, she not having been a party to the attachment proceedings in Virginia, the plaintiff W. H. Sallenger, her administrator, is still the owner of the notes; or, if they can not be had, is entitled to their value against the defendant J. W. Perry for their misapplication. If the notes were in fact the property of K. Sallenger, then, the attachment proceedings being apparently regular, their proceeds have been properly applied to his debt to the J. W. Perry Co.

Upon this question an issue was submitted to the jury (the fifth in a series), "To whom did the Willoughby notes belong at the time they were assigned to J. W. Perry & Co.?" His Honor charged the jury upon that issue, "That the burden was upon the plaintiff to establish the affirmative of the issue, No. 5, by a preponderance of the evidence, that if the plaintiffs had satisfied the jury by a preponderance of the evidence that the Willoughby notes were by mistake made payable to K. Sallenger, instead of to B. Sallenger, then they should answer the fifth issue, 'B. Sallenger.'"

We think there was error in the instruction. Usually in civil cases the issues are determined by a preponderance of the evidence, but there are exceptions to the rule, and it seems to us that this case falls within the exceptions. In the case of a deed, the meaning of the parties is to be found within its terms, and the law refuses to allow parol evidence to alter, add to, or vary that meaning, as a general rule. A deed is, between the parties, their agreement and understanding reduced to writing, and itself constitutes evidence of that meaning next to conclusive; and it ought not to be changed, except upon the clearest evidence of fraud or mistake.

Under the former practice, the Courts of law were not open for the correction of deeds for fraud or mutual mistake, but the complaining party had to seek relief in equity, and in that case, before the Chancellor would correct the instrument, the

evidence was required to be satisfactory, that is, "clear, strong and convincing," as was said in *Ely v. Early,* 94 N. C., 1, and in *Cobb v. Edwards,* 117 N. C., 244. In the present practice, the Court will, in cases where an issue of mistake in a deed is submitted, instruct the jury, "That from the evidence they should be thoroughly satisfied of the mistake alleged before they would be warranted in finding the affirmative." *Ely v. Early, supra.* Why should not the same rule of evidence apply in a case where a bond or note is sought to be corrected for fraud or mistake? Jurisdiction in equity, or rather with us now, equitable principles would have to be invoked to have the correction made. In England, *Henkle v. Royal Exchange Company,* 1 Ves., 317, a mistake in an insurance policy was the subject of equitable jurisdiction, and the same rule of evidence was enforced as would apply to the correction of a mistake in a deed. In the case before us, the notes upon their face contained express promises to pay the amounts named to K. Sallenger. K. Sallenger used them as his own without disclosing or suggesting any mistake as to the payee until they were seized by process of law by his creditors in attachment proceedings, when he undertakes for the first time to show that they are not his property. Certainly it seems to us that the rule as to the preponderance of the evidence ought not to apply here, but rather the rule which applies to the correction of deeds—that the evidence should be clear, strong and convincing. As analagous, it will be found in our reports, that in cases where lost bonds have been set up, whether in the law or equity courts, the proof was required to be of the "strictest and clearest" kind. *Fisher v. Carroll,* 41 N. C., 485. It (the evidence) must be satisfactory. *Deans v. Dortch,* 40 N. C., 331. It is not necessary to discuss the other exceptions of the defendant.

Error.

FURCHES, C. J., dissenting.    I agree to the rule laid down as to evidence, but do not think it applies to this case.

DOUGLAS, J., dissenting.    I can not concur in the opinion of the Court, because, to my mind, it is erroneous in theory and totally unsupported by authority.    There is no analogy between a deed which is sought to be corrected as between the parties, and a note which the payee himself says was erroneously made payable to himself.    There is no testimony to the contrary, and if the jury believed the evidence they were compelled to find as they did.    The notes were not used by the husband as his own, but were hypothecated as collateral security for the note of the wife.    The testimony all tends to show that these notes were the proceeds of the sale of land belonging to the wife.    They were, therefore, her property.    But it is said that she may have given the notes to her husband.    If that is true, it devolves upon the defendant to prove it.    There is certainly no presumption to that effect.    Suppose that the husband had purchased land in his own name with money belonging to his wife, a resulting trust would at once arise in favor of the wife.    She need not prove that there was any mutual mistake in making the deed to the husband.    She would simply be required to show that the purchase-money was her own, and a resulting trust would at once be created by operation of law.    The rule almost universally adopted by text-writers and approved by the Courts, is that laid down by Lord Chief Baron Eyre in *Dyer v. Dyer,* 2 Cox, 93, which is as follows:    "The clear result of all the cases, *without a single exception,* is that the trust of a legal estate, whether taken in the names of the purchaser and others jointly, or in the names of others without the purchaser, whether in one or several, whether jointly or successive, *results* to the man who advances the purchase-money."    If this rule universally applies to men *sui juris,* with how much greater force should it

apply to the defendant and confiding wife, whose noblest qualities of womanhood would make her but the easier victim of a careless or designing husband? It will scarcely be contended that property conveyed to the husband, but paid for by the wife, can be brought under the rule of advancements. As money turned into land would remain the property of the wife, I see no reason why land turned into money should go in a different direction. As J. W. Perry was not only a large stockholder in the corporation that bore his name, but was also its President, any notice to him would be notice to his company. There is no ground upon which I can concur in the opinion of the Court.