SALLINGER v. PERRY.

(Filed September 22, 1903.)

1. NEGOTIABLE INSTRUMENTS—*Mistake—Presumptions—Evidence.*

It is not error to refuse to charge that the presumption of law that notes were the property of the payee could not be rebutted by the unsupported evidence of the payee that they were executed to him by mistake.

2. NEGOTIABLE INSTRUMENTS—*Mistake—Evidence.*

It is not error to refuse to charge that where it is sought to show by parol evidence that notes were executed to the payee by mistake, that the evidence should be received with great caution and the jury should look anxiously for some corroboratory facts and circumstances in support of it, and that the claimant of the note should not delay in the ascertainment of his rights, as a stale claim would merit but little attention.

3. NEGOTIABLE INSTRUMENTS—*Mistake.*

It is sufficient, on the question of mistake as to the payee in a note, to charge that if the jury are thoroughly satisfied from the evidence that the draftsman of the notes made a mistake in drawing them, and that it was intended that they should be made payable to the claimant and not to the payee in the notes, then they should find accordingly.

ACTION by K. Sallinger and others against J. W. Perry & Company, heard by Judge *Frederick Moore* and a jury, at April Term, 1903, of the Superior Court of BERTIE County.

In April, 1893, Mrs. Bettie Sallinger, who was the wife of the plaintiff, K. Sallinger, was engaged in mercantile busi-

ness in Bertie County, under the name and style of B. Sallinger & Co. At that time she was indebted to the defendant, J. W. Perry, who was then trading under the firm name of J. W. Perry & Co., in the city of Norfolk, in the sum of $1,000, and for the payment of which indebtedness she, with her husband, the plaintiff, K. Sallinger, executed and delivered to J. W. Perry & Co. their note, securing the same by a deed of trust made to another of the defendants, George B. Henneberry, upon two tracts of land in Bertie County, belonging to Mrs. Sallinger. At the same time, or shortly thereafter, the plaintiff, K. Sallinger, put into the hands of Perry & Co. nine notes executed by J. B. Willoughby to K. Sallinger, aggregating in amount $832. It was admitted by the defendants that the Willoughby notes were placed by Sallinger with Perry & Co. as a collateral and additional security for the $1,000 note, and the defendants, in the second section of their answer, say "that the first two of said notes (Willoughby) which fell due were sent to K. Sallinger by J. W. Perry, at his request, for collection, and said Sallinger collected said notes, but has never paid over to said J. W. Perry, or to any one for him, any of the proceeds thereof." K. Sallinger alleged in his complaint and testified upon his examination that the Willoughby notes, though made payable to himself, were made so by mistake, and that they should have been made payable to his wife, B. Sallinger; that the consideration was the purchase money of a tract of land belonging to her.

The defendants admitted in their answer that $693.82 had been paid on the $1,000. There is an amount of $211.36 which the plaintiffs contend should be applied as a credit on the $1,000 note, but which the defendants contend should be applied towards the payment of a debt due by K. Sallinger to the J. W. Perry Company, a corporation formed in September, 1893, upon the discontinuance of the firm of J. W.

Perry & Co. That amount was derived from the proceeds of the sales of a lot of peanuts shipped by K. Sallinger to the J. W. Perry Company in February, 1897, and which was applied by the consignees to their debt against the consignor. Sallinger in his complaint alleged, and as a witness testified, that he accompanied the shipment of peanuts with written instructions to the consignees to apply the proceeds of sale thereof to the payment of the $1,000 debt due by himself and wife to the firm of J. W. Perry & Co. That was denied by the defendant. In 1900 the J. W. Perry Company, of which concern J. W. Perry was a large stockholder and president and chief manager, attached in Norfolk the seven remaining Willoughby notes, which were in the hands of J. W. Perry, for the purpose of having them condemned and sold for the payment of the debt due by K. Sallinger to the J. W. Perry Company, and in these proceedings the notes were sold as the property of K. Sallinger and the proceeds applied to that debt.

Mrs. Sallinger has died intestate and left several infant children, her heirs-at-law, who have been made parties defendant, and she left no other real estate than that conveyed in the deed of trust to Henneberry. The trustee had advertised the land for sale to pay the balance claimed to be due on the $1,000 note, and the sale was enjoined until the final hearing of the case. On the trial there was a judgment for the plaintiffs, and the defendants appealed.

*Francis D. Winston,* for the plaintiffs.

*J. B. Martin, Day & Bell* and *Winborne & Lawrence,* for the defendants.

MONTGOMERY, J., after stating the facts. The main question presented by the appeal is that concerning the ownership of the Willoughby notes. The plaintiff, W. H. Sallinger,

administrator of B. Sallinger, contends that upon the pay-
ment of the balance due upon the note of $1,000 executed by
his intestate and the other plaintiff, K. Sallinger, to J. W.
Perry & Co., the Willoughby notes belonged to him as admin-
istrator of B. Sallinger.   There was evidence, uncontradicted,
to the effect that B. Sallinger, at the time of her death and at
the time of the trial, was indebted to other persons than J. W.
Perry & Co.

The plaintiffs introduced evidence tending to show that
J. C. Willoughby bought a tract of land belonging to the
plaintiff's intestate, and, by mistake of the draftsman, exe-
cuted his nine promissory notes, each in the sum of $92.45,
to K. Sallinger instead of to B. Sallinger, the owner of the
land; that upon discovering the mistake, K. Sallinger en-
dorsed the notes in blank and put them in the safe of B. Sal-
linger & Co.   The jury found upon the issue (No. 5), "To
whom did the Willoughby notes belong at the time they were
assigned to J. W. Perry & Co. ?" that the notes belonged to
B. Sallinger.

On the fifth issue the defendant Perry, through his counsel,
requested several special prayers for instructions, the purpose
of one of which was that the law required that the jury must
be satisfied and convinced by the evidence that the Willoughby
notes were made payable to K. Sallinger by the mutual mis-
take of himself and his wife; otherwise they should answer
the issue, "K. Sallinger"; another, that the presumption of
law that the notes were the property of the payee could not be
rebutted by the unsupported evidence of K. Sallinger that
they were executed to him by mistake, and that the issue
should be answered "K. Sallinger"; another, "that when the
plaintiff seeks to have the J. E. Willoughby notes and mort-
gage in question reformed, or a trust declared, for mistake in
the draftsman for the same evidence to establish such equity
or right, being merely parol, it should be received by the jury

with great caution, and the jury should look anxiously for some corroborating facts and circumstances in support of it; and in a case of this nature the claimant in opposition to the legal title should not delay the ascertainment of his right, as a stale claim would merit but little attention, and unless you are convinced by clear and convincing proof of such right, you should answer the issue 'K. Sallinger.'" His Honor refused these instructions, but charged the jury: "That the burden of proof on the fifth issue is on the plaintiff. The quantam of proof required is different from that required on the fourth issue. Before you can answer the fifth issue 'Yes,' the plaintiff must establish the affirmative of the issue by evidence that is clear, strong and convincing. In this case there is no evidence that Bettie Sallinger, if she was the owner of the Willoughby notes, ever parted with her interest in these notes before they were transferred to Perry, except that they were made payable to K. Sallinger."

The Court also charged on this issue: "If you are thoroughly satisfied from the evidence that the draftsman of the Willoughby notes made a mistake in drawing them—that is, that it was intended that said notes should be made payable to Bettie Sallinger, but that by the mistake of the draftsman they were made payable to K. Sallinger—you should answer the fifth issue 'B. Sallinger,' but otherwise you should answer it 'K. Sallinger.'"

We see no error in the refusal of his Honor to grant the prayers of the defendant Perry, or in the instructions which he gave on the fifth issue. It would have been better if his Honor had said to the jury that before they could answer the fifth issue "B. Sallinger" the plaintiff must establish, by evidence clear, strong and convincing, that the notes were hers at the time they were assigned to J. W. Perry & Co. But there is no doubt that the jury understood his meaning, and the defendant has not been prejudiced.

The Willoughby notes, then, having been found to be the property of B. Sallinger, the sale of seven of them under the attachment proceedings in Norfolk, Va., as the property of K. Sallinger was void, and they belong, therefore, to W. H. Sallinger, the plaintiff administrator of B. Sallinger, to be used in the due course of administration of her estate.

From our view of the case, it is unnecessary to discuss the questions raised on the appeal in connection with the shipment of the peanuts by Sallinger to the J. W. Perry Company and the application of the proceeds of their sale by said company. The jury found that the peanuts were received by K. Sallinger from Willoughby as a payment on his notes. That being so, by operation of law the value of the peanuts, $211.36, whatever became of them afterwards, was a credit upon the $1,000 note, for by the evidence of both K. Sallinger and Perry, Sallinger was the agent of Perry to collect the two Willoughby notes which first fell due; and, also, in the answer of Perry, he admits that he sent the two notes to Sallinger to collect from Willoughby. If, however, it be true, as Perry averred in his answer, that Sallinger collected, in money, the two Willoughby notes and failed to pay the proceeds over to him, he (Perry) is, in law, in no better position than if Sallinger had received the peanuts from Willoughby in payment of the two notes, as the jury have found. He (Sallinger) would have been an unfaithful agent, for whose act the principal (Perry) was responsible. A payment in money to Sallinger by Willoughby would have been a payment to J. W. Perry, and that payment belonged, by force of law, upon the $1,000 note.

We have examined carefully the other exceptions on matters of evidence, and we see no merit in them.

The judgment of the Court below is

Affirmed.

WALKER, J., concurring. I fully concur in the disposition of this case, but I cannot yield my assent to the principle stated in the opinion of the Court, that it requires clear, strong and convincing proof to establish Mrs. Sallinger's ownership of the Willoughby notes. No greater quantity of proof is required in this case than would be necessary to establish her ownership of any other kind of property, where that ownership is disputed. The mere fact that the notes were payable to K. Sallinger, her husband, does not, in my opinion, make any difference or call for a greater degree of proof to establish her right and title to the notes. Besides, it appears that K. Sallinger admits that the notes were given for the purchase money of his wife's land which was sold to Willoughby, and that his wife is the real owner of the notes; and it further appears that K. Sallinger had endorsed the notes to his wife, which transferred the legal title to her, if such a transfer is necessary to complete her title or ownership. It seems to me that the charge of the Court was more favorable to the defendants than they had a right to expect.

CONNOR, J., concurs in the concurring opinion.

DOUGLAS, J., concurring. I concur in the concurring opinion of Justice WALKER, for the reasons stated in my dissenting opinion, when the case was here before, in 130 N. C., 134, 139.